# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

_____

No. 14-1264

_____

**FILED**

**November 10, 2015**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WEST VIRGINIA BOARD OF EDUCATION,
and L. WADE LINGER, JR.,**
Petitioners

v.

**JOREA M. MARPLE,**
Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable James C. Stucky, Judge
Civil Action No. 14-C-731

**REVERSED**

_____

Submitted: October 6, 2015
Filed: November 10, 2015

**J. Victor Flanagan, Esq.**
**Julie Meeks Greco, Esq.**
**Katie L. Hicklin, Esq.**
**Pullin, Fowler, Flanagan, Brown & Poe,
PLLC**
**Charleston, West Virginia**
**Counsel for the Petitioners**

**Timothy N. Barber, Esq.**
**Charleston, West Virginia**
**Counsel for the Respondent**

**Thomas Patrick Maroney, Esq.**
**Charleston, West Virginia**
**Counsel for the Respondent**

**A. Andrew MacQueen, III, Esq.**
**Mt. Pleasant, South Carolina**
**Counsel for the Respondent**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**CHIEF JUSTICE WORKMAN, deeming herself disqualified, did not participate in the decision of the Court.**

**JUDGE CHRISTOPHER C. WILKES sitting by temporary appointment.**

**SYLLABUS BY THE COURT**

1.      A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine.

2.      The state insurance policy exception to sovereign immunity, created by West Virginia Code § 29-12-5(a)(4) [2006] and recognized in Syllabus Point 2 of *Pittsburgh Elevator Co. v. W.Va. Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983), applies only to immunity under the *West Virginia Constitution* and does not extend to qualified immunity.  To waive the qualified immunity of a state agency or its official, the insurance policy must do so expressly, in accordance with Syllabus Point 5 of *Parkulo v. W.Va. Bd. of Probation & Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996).

3.      "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability."  Syl. Pt. 11, *W.Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W.Va. 492, 766 S.E.2d 751 (2014).

**Justice Ketchum:**

Petitioners, the West Virginia Board of Education ("the Board") and its former president, Mr. L. Wade Linger, appeal a November 3, 2014, order of the Circuit Court of Kanawha County. In its order, the circuit court denied the Board's and Mr. Linger's motion to dismiss a lawsuit filed by the Respondent, Dr. Jorea Marple, challenging her termination from employment as the Board's Superintendent of Schools.

The Board and Mr. Linger contend that they had the discretion to terminate Dr. Marple because the *West Virginia Constitution*, statutory law, and Dr. Marple's employment contract declared her to be an at-will employee. They also claim that the doctrine of qualified immunity protects a government actor's prudent exercise of discretion, including whether to hire or retain an employee. Therefore, they assert the doctrine of qualified immunity bars Dr. Marple's suit. By contrast, Dr. Marple argues that she had a constitutionally protected interest in her continued employment. She asserts the Board and Mr. Linger could not terminate her without first affording her due process protections.

Upon review, we find that Dr. Marple's complaint fails to allege a cause of action sufficient to overcome the Board's and Mr. Linger's discretion to terminate her. Therefore, qualified immunity bars each of her claims. Accordingly, we reverse the circuit court's November 3, 2014, order and dismiss Dr. Marple's complaint.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from Dr. Marple's termination as Superintendent of Schools for the State of West Virginia in November 2012. Dr. Marple had served as superintendent for almost two years under an at-will employment contract, during which time she received an exemplary performance evaluation and a pay raise. The Board also issued a press release describing Dr. Marple as an "outstanding visionary and leader" who has "brought national recognition to our state." She claims that she had no reason to feel that her at-will employment as superintendent might be terminated.

The Board voted to terminate Dr. Marple's employment in a regularly-scheduled meeting held on November 14 and 15, 2012. Two weeks later, on November 29, 2012, the Board held another meeting to reconsider its decision. The Board, at Mr. Linger's recommendation, publicly voted to affirm Dr. Marple's termination. Mr. Linger then offered the following statement, which was adopted by the Board:

> Everyone is familiar with the situation we find ourselves in regarding the litany of statistics related to student achievement and our rankings.
>
> -West Virginia students rank below the national average in 21 of 24 categories measured by the National Assessment of Education Progress (NAEP).
>
> -As a matter of fact, over the last decade, many of our NAEP scores have slipped instead of improving.
>
> -Education Week's most recent Quality Counts Report gave West Virginia an F in K-12 achievement.
>
> -The Statewide graduation rate is only 78 percent.

2

-1 in 4 of our high school students in West Virginia do not graduate on time.

. . . .

We are not saying that Superintendent Marple is any more responsible than governors, legislators, educators or board members for these shortcomings.

We are not here to affix blame today. . . .

Some of the issues that caused board members to perceive a change was needed are the following:

1. Many members found no sense of urgency in the department to address some of the issues that have been outlined.

2. When discussing concerns, we often were met with excuses and not actions.

3. Too often we were told how things can't change instead of being offered solutions.

4. When current practices were challenged, we often found people being defensive.

Considering everything just outlined in this statement, I believe we needed a change in direction and in order to do that, we needed a change in leadership.

The Board's statement did not say that negative education statistics in West Virginia were Dr. Marple's fault, nor did it deny that these problems predated her employment. Instead, the Board stated that satisfactory progress had not occurred in public education and that a new superintendent might achieve different results. It is undisputed that Dr. Marple had no opportunity to object to or rebut the Board's statement or her termination.

3

Dr. Marple sued the Board and Mr. Linger in the circuit court alleging that her due process rights under the *West Virginia Constitution* were violated.[1] Specifically, she contended that (1) the Board's statement infringed upon her liberty interest in her good name and potential for future government employment, and (2) she had a property interest in continued employment as superintendent. In addition, Dr. Marple asserted claims for breach of contract, defamation, and false light.

The Board and Mr. Linger did not file an answer to the lawsuit. Instead, they filed a motion to dismiss asserting that their immunity barred each of Dr. Marple's claims. The Board argued that it was protected by sovereign immunity under Article VI, Section 35 of the *West Virginia Constitution*,[2] and Mr. Linger contended he was entitled to qualified immunity (the common-law principle protecting discretionary government action). Additionally, the Board claimed qualified immunity at oral argument on the motion and in its proposed order to dismiss.

The circuit court denied the Board's and Mr. Linger's motion to dismiss and held that they were not entitled to assert sovereign immunity under the *West Virginia*

---

[1] Article III, Section 10 of the *West Virginia Constitution* provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." Dr. Marple makes no argument arising under Federal law.

[2] Article VI, Section 35 of the *West Virginia Constitution* provides, in pertinent part: "The State of West Virginia shall never be made defendant in any court of law or equity[.]"

4

*Constitution* because they were insured under a state liability insurance policy.[3] The circuit court's order failed to discuss whether the Board or Mr. Linger should be dismissed because they have qualified immunity for their discretionary acts.

The Board and Mr. Linger now appeal the circuit court's order denying their motion to dismiss.

## II.
## STANDARD OF REVIEW

The Board and Mr. Linger request that we review the circuit court's denial of its motion to dismiss under West Virginia Rule of Civil Procedure 12(b)(6).[4] Ordinarily, we do not review the denial of a Rule 12(b)(6) motion because it is not a final order. However, we recognize an exception to this general rule "when the defense is in the nature of an immunity." *Hutchison v. City of Huntington*, 198 W.Va. 139, 147, 479

---

[3] In denying the Board's and Mr. Linger's motion to dismiss, the circuit court considered documents that were outside Dr. Marple's complaint, such as the minutes from the Board's meetings and the Board's coverage under a state liability insurance policy. Of these documents, only the minutes for the Board's November 29 meeting were attached to the complaint. "However, a court may consider [on a motion to dismiss], in addition to the pleadings, documents annexed to it, and other materials fairly incorporated within it. This sometimes includes documents referred to in the complaint but not annexed to it." FRANKLIN D. CLECKLEY, ROBIN JEAN DAVIS & LOUIS J. PALMER, JR., LITIGATION HANDBOOK ON WEST VIRGINIA RULES OF CIVIL PROCEDURE §12(b)(6) at 387 (4th ed. 2012). Because these matters are incorporated by reference in Dr. Marple's complaint, neither the trial court nor this Court are precluded from considering them in evaluating the Board's and Mr. Linger's motion to dismiss. *See e.g., Forshey v. Jackson*, 222 W.Va. 743, 748-49, 671 S.E.2d 748 (2008).

[4] West Virginia Rule of Civil Procedure 12(b)(6) [1998] allows a defendant in a civil action to file a motion to dismiss a claim against him/her for "failure to state a claim upon which relief can be granted."

5

S.E.2d 649, 657 (1996). Indeed, the State's entitlement to immunity "is an *immunity from suit* rather than a mere defense to liability," which is "effectively lost if the case is erroneously permitted to go to trial." *Id*., 198 W.Va. at 147, 479 S.E.2d at 657 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

We have held: "A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 2, *Robinson v. Pack*, 223 W.Va. 828, 679 S.E.2d 660 (2009). Although this appeal involves the denial of a motion to dismiss, we find that our rationale in *Robinson* is applicable to this case because "[any] ruling denying the availability of immunity fully resolves the issue of a litigant's obligation to participate in litigation." *Id.*, 223 W.Va. at 832, 769 S.E.2d at 664.

Therefore, we hold that a circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine.[5] Accordingly, the fact that the circuit court's order was not a final order does not preclude us from reviewing this appeal.

Having established that this appeal is properly before this Court, we review the circuit court's order denying the motion to dismiss *de novo*. Syl. Pt. 4, *Ewing v. Bd.*

---

[5] Although not specifically discussed in the appealed order, qualified immunity was an issue before the circuit court. Therefore, we can fairly say the circuit court's order was a denial of qualified immunity. However, to the extent the circuit court's order was based on sovereign immunity, it is well-established that "the denial of a substantial claim of absolute immunity is an order appealable before final judgment[.]" *Mitchell*, 472 U.S. at 525.

6

*of Educ. of Cnty. of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998). "For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff [Dr. Marple], and its allegations are to be taken as true." *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978). Likewise, dismissal for failure to state a claim is only proper where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint. Syl. Pt. 3, *Chapman v. Kane Transfer Co. Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977).

However, to survive a motion to dismiss, a plaintiff's complaint must "at a minimum . . . set forth sufficient information to outline the elements of his claim." *Price v. Halstead*, 177 W.Va. 592, 594, 355 S.E.2d 380, 383 (1987). Furthermore, "in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff." *Hutchison*, 198 W.Va. at 149, 479 S.E.2d at 659.

## III.
## ANALYSIS

In this appeal, the Board and Mr. Linger argue that the circuit court erred by refusing to dismiss Dr. Marple's complaint. They contend that her suit is barred, as a matter of law, by qualified immunity. Qualified immunity preserves the freedom of the State, its agencies, and its employees to deliberate, act, and carry out their legal responsibilities within the limits of the law and constitution.

As we discuss below, we find that the circuit court was in error and should have dismissed the complaint. The complaint establishes that the actions complained of

7

by Dr. Marple were discretionary judgments within the authority of the Board and Mr. Linger. The Constitution, statutory law, and Dr. Marple's contract with the Board all specify that her employment was at the "will and pleasure" of the Board. Because Dr. Marple has not identified a clearly established right that was violated by the discretionary actions of the Board or Mr. Linger, her suit is precluded by qualified immunity.

### A. *State Insurance and Qualified Immunity*

The circuit court refused to afford the Board or Mr. Linger qualified immunity because they are insured under a state-purchased liability insurance policy. In doing so, the circuit court relied on a legislatively-created state insurance policy exception to sovereign immunity. This exception, created by West Virginia Code § 29-12-5(a)(4) [2006], provides, in pertinent part, that: "Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the *constitutional immunity* of the State of West Virginia against claims or suits." (Emphasis added).

In accordance with this legislatively-created exception, we have held that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional *constitutional* bar to suits against the State." Syl. Pt. 2, *Pittsburgh Elevator Co. v. W.Va. Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983) (emphasis added).

The Board and Mr. Linger concede that the state insurance policy exception under West Virginia Code § 29-12-5 precludes them from asserting sovereign immunity, which originates in the *West Virginia Constitution*. However, they argue that sovereign

8

immunity is distinct from qualified immunity, which originates in the common law. Therefore, the fact that they are insured under a state insurance policy does not preclude them from claiming qualified immunity.

We agree that the Board and Mr. Linger may assert qualified immunity even if they are precluded from claiming sovereign immunity "'[b]ecause the doctrines of sovereign and [qualified] immunity spring from distinct, if related, concerns, [and thus,] each has evolved independently.'" *W.Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W.Va. 492, 503, 766 S.E.2d 751, 762 (2014) (quoting George A. Bermann, *Integrating Governmental and Officer Tort Liability*, 77 Colum. L. Rev. 1175, 1213 (1977)).

Sovereign immunity is concerned with protecting the public fisc. *Pittsburgh Elevator Co.*, 172 W.Va. at 756, 310 S.E.2d at 689. Accordingly, "where recovery is sought against the State's liability insurance coverage, the doctrine of constitutional immunity, designed to protect the public purse, is simply inapplicable[.]" *Id.*

By contrast, the purpose of qualified immunity is to allow officials to do their jobs and to exercise judgment, wisdom, and sense without worry of being sued. As we have said: "[t]he public interest [behind qualified immunity] is that the official conduct of the officer not be impaired by constant concern about personal liability." *Parkulo v. W.Va. Bd. of Probation & Parole*, 199 W.Va. 161, 177, 483 S.E.2d 507, 523 (1996). Indeed, "fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 813 (1982) (quoting *Gregoire v. Biddle*, 177 F.2d

9

579, 581 (2d Cir. 1949)). The fact that the public fisc is kept safe by a state insurance policy does not mean that a public officer is able to do his or her job unhampered by frivolous litigation.

Accordingly, we have determined that the state insurance policy exception applies only to sovereign immunity.[6] Without question, West Virginia Code § 29-12-5 speaks only of the "*constitutional* immunity of the State[.]" (Emphasis added). It does not speak to other more limited statutory or common-law immunities. Therefore, even if the State purchases a policy of insurance, a state agency and its official may claim immunities under the common law, such as qualified immunity. *See, e.g., Parkulo*, 199 W.Va. at 175-77, 483 S.E.2d at 521-24. *See also Clark v. Dunn*, 195 W.Va. 272, 277, 465 S.E.2d 374, 379 (1995) ("We assume that the appellants expected to utilize [the state insurance policy] exception to the constitutional immunity of the State . . . in this action.

---

[6] We recognize that in our limited holding in *Jackson v. Belcher*, 232 W.Va. 513, 753 S.E.2d 11 (2013), we applied the state insurance policy exception to find that a state agency's statutory immunity for emergency service work under West Virginia Code § 15-5-11(a) (2006) was defeated. We limited our holding in that case to the immunity under a statute which contained language expressly preserving an individual's right to sue the state when allowed by "any other law." We held: "W. Va. Code § 15-5-11(a) (2006) (Repl.Vol.2009) expressly preserves an individual's right 'to receive benefits or compensation to which he or she would otherwise be entitled under . . . any other law' and operates to permit an individual to maintain a cause of action against the State . . . where . . . the recovery sought is confined to the limits of the State's liability insurance coverage." Syl. Pt. 8, in part, *Id.*, 232 W.Va. at 520-21, 753 S.E.2d at 18-19. "Without question, the majority has crafted its new syllabus point [8] limiting its analysis to the particular statute at issue." *Id.*, 232 W.Va. at 521, 753 S.E.2d at 19 (Loughry, J. dissenting.).

10

However, the issue of qualified or official immunity now before the Court is not resolved solely by the application of that exception.").

The fact that a plaintiff seeks recovery against a state agency and/or its official "under and up to the limits" of its liability insurance policy does not waive qualified immunity. Rather, qualified immunity is waived by an insurance policy *only* if the policy's terms expressly say so. We have held:

> If the terms of the applicable insurance coverage and contractual exceptions thereto acquired under W.Va. Code § 29-12-5 *expressly grant the State greater or lesser immunities or defenses than those found in the case law, the insurance contract should be applied* according to its terms and the parties to any suit should have the benefit of the terms of the insurance contract.

Syl. Pt. 5, *Parkulo*, 199 W.Va. at 176, 483 S.E.2d at 522 (emphasis added). Likewise, in *Hess v. W.Va. Div. of Corrections*, 227 W.Va. 15, 20, 705 S.E.2d 125, 130 (2010), it was dispositive that: "In the instant case, the insurance policy at issue . . . does not waive the Appellant's qualified immunity. Rather, the Certificate of Liability Insurance to the policy expressly provides that 'the additional insured . . . does not waive any statutory or common law immunities conferred upon it.'"

Therefore, we hold that the state insurance policy exception to sovereign immunity, created by West Virginia Code § 29-12-5(a)(4) [2006] and recognized in Syllabus Point 2 of *Pittsburgh Elevator Co. v. W.Va. Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983), applies only to immunity under the *West Virginia Constitution* and does not extend to qualified immunity. To waive the qualified immunity of a state agency or its official, the insurance policy must do so expressly, in accordance with

11

Syllabus Point 5 of *Parkulo v. W.Va. Bd. of Probation & Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996).

Dr. Marple invites this Court to extend the state insurance policy exception under West Virginia Code § 29-12-5 to qualified immunity even though the Legislature declined to do so. However, we have held: "It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Phillips v. Larry's Drive-In Pharmacy*, Inc., 220 W.Va. 484, 491, 647 S.E.2d 920, 927 (2007).

Under the facts of this case, the Board and Mr. Linger are not precluded from claiming qualified immunity because the insurance policy's terms do not expressly waive the defense. In fact, the Certificate of Liability Insurance contained in the record expressly states: "It is a condition precedent of coverage under the policies that the additional insured *does not waive any statutory or common law immunity* conferred upon it." (Emphasis added and Caps-lock omitted).[7]

### B. Standard for Qualified Immunity

In determining whether a state agency and its official(s) are entitled to qualified immunity,

> [A] reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions

---
[7]

12

> constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions.

Syl. Pt. 10, *A.B.*, 234 W.Va. at 507, 766 S.E.2d at 766.

According to Dr. Marple's complaint, this case arises out of the "summary dismissal from her position." It is undisputed that "the broad categories of training, supervision, and *employee retention*, as characterized by respondent, easily fall within the category of '*discretionary*' governmental functions." *Id.*, 234 W.Va. at 514, 766 S.E.2d at 773 (emphasis added).

Furthermore, the Board and Mr. Linger have broad authority over the position of Superintendent of Schools for the State of West Virginia. The *West Virginia Constitution* creates the position and provides that "The West Virginia board of education shall . . . select the state superintendent of free schools who shall serve *at its will and pleasure*." W.VA. CONST. ART. XII, § 2 (emphasis added). The Legislature has also provided that: "There shall be appointed by the state board a State Superintendent of Schools who serves *at the will and pleasure of the state board*." W.VA. CODE § 18-3-1 [2006] (emphasis added). Given the Board's wide discretion in determining whether to retain Dr. Marple as superintendent, we see no reason to deviate from our holding in *A.B.* that employee retention is a discretionary function.[8]

---

[8] We caution that: "a broadly-characterized governmental action or function may fall under the umbrella of a 'discretionary' function; but within this discretionary function there are nonetheless particular laws, rights, statutes, or regulations which impose ministerial duties on the official charged with these functions." *A.B.*, 234 W.Va.

(continued . . .)

13

In regards to qualified immunity for discretionary functions, such as employee hiring and retention, we have held:

> To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. Pt. 11, *A.B.*, 234 W.Va. at 507, 766 S.E.2d at 767.

Because there are no allegations in Dr. Marple's complaint that the Board or Mr. Linger acted fraudulently, maliciously, or oppressively, we apply a two-part test to determine whether qualified immunity applies: "(1) does the alleged conduct set out a constitutional or statutory violation; and (2) were the constitutional standards clearly established at the time[?]" *Hutchison*, 198 W.Va. at 149, 479 S.E.2d at 659 (1996).[9]

---

at 514, 766 S.E.2d at 773. It is well-established that government agencies and their officials have no immunity for ministerial acts. Restatement (Second) of Torts § 895D cmt. h (1979). Dr. Marple's complaint asserts claims for constitutional violations, as well as claims based in tort and contract, and she argues that these claims are sufficient to defeat the Board's and Mr. Linger's immunity for discretionary functions. Whether the Board and Mr. Linger were involved in a ministerial act is not an issue before this Court.

[9] "Our [qualified] immunity test is designed to parallel the Supreme Court's standard of qualified immunity for public officials in Section 1983 actions[.]" *Chase Securities,* 188 W.Va. at 365, 424 S.E.2d at 600.

14

The first step is straight-forward: "If the complaint fails to allege a cognizable violation of constitutional or statutory rights it also has failed to state a claim upon which relief can be granted." *Hutchison*, 198 W.Va. at 149 n.12, 479 S.E.2d at 659 n.12. Therefore, our inquiry ends if the answer to the first question is "no." As to the second step, we stated: "To prove that a clearly established right has been infringed upon, a plaintiff must. . . . make a 'particularized showing' that a 'reasonable official would understand that what he is doing violated that right' or that 'in the light of preexisting law the unlawfulness of the action was 'apparent.'" *Id.*, 198 W.Va. at 149 n.11, 479 S.E.2d at 659 n.11. *See also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[Q]ualified immunity . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

Dr. Marple's complaint does not contain any allegation that the Board or Mr. Linger acted fraudulently, maliciously, or oppressively. It also does not seek relief for a statutory violation.[10] Rather, her complaint broadly alleges that her due process

---

[10] Dr. Marple argues that the Board and Mr. Linger violated the West Virginia Open Meetings Act. *See* W.VA. CODE § 6-9A-1, *et. seq.* However, she failed to assert any claim for damages, or any other type of relief, under the Act in her complaint. Even if Dr. Marple would have asserted a claim based on the Open Meetings Act, she could not have been afforded relief for two reasons. First, the Board cured any potential violation in the November 14 and 15 meeting by conducting its November 29 meeting. *See, e.g., McComas v. Bd. of Educ. of Fayette Cnty*, 197 W.Va. 188, 201, 475 S.E.2d 280, 293 (1996). Second, she was time-barred from asserting a claim under the Act when she filed her complaint. West Virginia Code § 6-9A-6 [1999] provides: "The circuit court . . . has jurisdiction to enforce this article upon civil action commenced by any citizen of this state *within one hundred twenty days after the action complained of was taken or the decision complained of was made*." (Emphasis added). Dr. Marple filed her complaint in

(continued . . .)

rights under the *West Virginia Constitution* were violated. As we discuss below, the actions of the Board and Mr. Linger identified in Dr. Marple's complaint are not constitutional violations.[11]

### *C. Dr. Marple's Constitutional Claims*

Dr. Marple alleges in her complaint that the Board and Mr. Linger infringed on her liberty and property interests by summarily terminating her, thus violating her right to due process under the *West Virginia Constitution*. We have held: "The Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against State action which affects a liberty or property interest." Syl. Pt. 1, *Waite v. Civil Serv. Comm'n*, 161 W.Va. 154, 241 S.E.2d 164 (1977).

We use a two-step inquiry to determine whether a state employer infringed on its employee's liberty or property interest: (1) did the employee have a liberty or property interest at stake; and (2) if so, how much process is he/she entitled under our Due Process Clause. *Waite*, 161 W.Va. at 159, 241 S.E.2d at 167. "[I]f the answer [to the first question] is no, the second step becomes unnecessary because [the employee] has

April 2014, seventeen months after her November 2012 termination and well beyond the 120-day deadline.

[11] Ordinarily, the immunity of a state agency and its officer are addressed separately. *See A.B.*, 234 W.Va. at 502, 766 S.E.2d at 761 (Complaining that this Court, when considering immunity, often "treated individual defendants and their employers collectively, without separate analysis of whether the State or State agency is necessarily entitled to like treatment and why."). However, in this case, Dr. Marple alleges the same claims against the Board and Mr. Linger, and she seeks the same relief from them. Also, the Board and Mr. Linger assert the same defenses in their appeal to this Court. Likewise, our reasons for finding that qualified immunity protects the Board and Mr. Linger are the same, so we discuss them together.

16

no claim warranting constitutional protection." *Id.* As we have stated: "The threshold question in any claim of due process deprivation is isolation of the property interest or liberty interest that the plaintiff alleges was at stake." *Orteza v. Monongalia Cnty. Gen. Hosp.*, 173 W.Va. 461, 466-67, 318 S.E.2d 40, 45 (1984).

The Board and Mr. Linger contend that Dr. Marple failed to show she had a liberty or property interest in her at-will employment. Therefore, in terminating Dr. Marple from her at-will position, they contend they were not required to afford her any due process protections. *Waite*, 161 W.Va. at 159, 241 S.E.2d at 167.

We agree that Dr. Marple did not allege sufficient facts to show that either a liberty or property interest was implicated by the acts of the Board or Mr. Linger.

### 1. Liberty Interest

Dr. Marple argues that a constitutionally protected liberty interest was implicated by the Board's statement that: (1) it was dissatisfied with West Virginia's negative education statistics; (2) sufficient progress had not occurred in public education; and (3) a new superintendent of schools might achieve different results.

The Board and Mr. Linger argue that this statement did not impugn Dr. Marple's good name or character. Therefore, it was not stigmatizing enough to implicate her liberty interest.

We define "liberty interest" as follows:

> The "liberty interest" includes an individual's right to freely move about, live and work at his chosen vocation, without the burden of an unjustified label of infamy. A liberty interest is implicated when the State makes a charge against an individual *that might seriously damage his standing and*

17

*associations in his community or places a stigma or other disability on him that forecloses future employment opportunities*.

Syl. Pt. 2, *Waite*, 161 W.Va. at 154, 241 S.E.2d at 164 (emphasis added). Accordingly, a liberty interest encompasses two of a state employee's most basic interests: (1) his/her good name; and (2) his/her prospects for future employment. *Major v. DeFrench*, 169 W.Va. 241, 256, 286 S.E.2d 688, 697 (1982).

West Virginia does not have a bright-line rule regarding when a charge sufficiently stigmatizes an employee's good name or forecloses his/her prospects for future employment. On the one hand, a charge regarding an employee's character flaw implicates a liberty interest (*i.e.* charges of dishonesty, immorality, or criminality). *See Waite*, 161 W.Va. at 160, 241 S.E.2d at 168; *Roth*, 408 U.S. at 573. On the other hand, it is well-established that not all public employees have a protected liberty interest in continued government employment, even when his/her termination makes him/her less attractive to potential employers. *Freeman v. Poling*, 175 W.Va. 814, 822, 338 S.E.2d 415, 422 (1985). Further, "an unexplained termination or discharge from employment does not create a sufficient stigma to invoke a liberty interest protection[.]" *Id.*, 175 W.Va. at 822, 338 S.E.2d at 423.

Dr. Marple does not allege that the Board's statement reflected upon her character. Likewise, we find the Board's statement does not impugn Dr. Marple's honesty, morality, or integrity.

Instead, Dr. Marple argues that the Board's statement casts doubt on her established record of competence. However, she fails to cite any legal support for her

18

position that casting doubt on an employee's competence implicates a liberty interest. To the contrary, this Court has found that a statement explaining termination as the "loss of confidence in your ability to affectively discharge the duties and responsibilities of your position[,]" was not sufficient to "reach the level of stigmatization which would foreclose future employment opportunities or seriously damage . . . [the individual's] standing and associations in the community." *Wilhelm v. W.Va. Lottery*, 198 W.Va. 92, 93, 479 S.E.2d 602, 603 (1996) (citations omitted).[12]

Even if an employee's liberty interest was implicated by a clear charge of incompetence, that is not what happened in this case. Rather, the Board's statement was that education statistics in West Virginia are poor compared to the rest of the nation – a fact that long predates Dr. Marple and, unfortunately, appears to outlive her employment as superintendent. The Board's statement made clear that it did not affix blame upon Dr. Marple and that she was not more responsible for this problem than "governors, legislators, educators, or board members."

---

[12] Other jurisdictions have held that a mere charge of incompetence does not implicate an employee's liberty interest. *See Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982) (Statement regarding employee's "incompetence and outside activities," is not "the type of communication which gives rise to a protected liberty interest."); *Adams v. Walker*, 492 F.2d 1003 (7th Cir. 1974) (charges of incompetence, neglect of duty, and malfeasance in office are not stigmatizing); *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361 (9th Cir. 1976) (charge of incompetence against pathology resident did not implicate liberty interest); *Jones v. Univ. of Iowa*, 836 N.W.2d 127 (Iowa 2013) ("[Employer's] comments could undoubtedly be interpreted as accusations of professional incompetence, such accusations fall substantially short of the level of stigma required to establish a constitutionally protected liberty interest.").

19

The Board is charged with promoting education in West Virginia. In fulfilling that duty, it is not bound to the leadership of a particular superintendent when it discerns that change is in the best interest of West Virginia's students. To find otherwise would eviscerate the Board's discretion as created by the *West Virginia Constitution*.

While the Board's statement may have come as a shock to Dr. Marple, especially in light of her previous accolades, our role is not to determine whether the Board's statement was fair or correct, but rather, whether it violated the Constitution. Under the specific facts of this case, we cannot say the Board's statement was stigmatizing enough to implicate Dr. Marple's liberty interest.

## 2. *Property Interest*

Dr. Marple acknowledges that the *West Virginia Constitution*, statutory law, and her employment contract all declare her position as superintendent to be at-will. Still, she claims that she had a property interest in her continued employment for the Board. By contrast, the Board and Mr. Linger argue that Dr. Marple, an at-will employee, had nothing more than a unilateral expectation of continued employment, which does not create a property interest.

We have defined "property interest" as follows: "A 'property interest' includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement *under existing rules or understandings*." Syl. Pt. 3, *Waite*, 161 W.Va. at 154, 241 S.E.2d at 164 (emphasis added).

20

Dr. Marple asserts that certain Board actions, such as her positive performance review, her pay-raise, and the Board's gleaming press release about her, evidenced a mutual understanding that she could remain superintendent so long as she did a good job. Thus, Dr. Marple felt she had an entitlement to continued employment as superintendent based on her good relationship with the Board.

However, we have held: "'A "property interest" protected by due process must derive from private contract or state law, and must be more than the unilateral expectation of continued employment.' *Major v. DeFrench*, 169 W.Va. 241, 286 S.E.2d 688, 695 (1982)." Syl. Pt. 3, *Orteza*, 173 W.Va. at 467, 318 S.E.2d at 46. Therefore, the fact that Dr. Marple's termination came as a surprise to her is insufficient to implicate a property interest. Dr. Marple has a property interest in her employment as superintendent only if her purported claim of entitlement is fairly derived from (1) her employment contract, or (2) applicable state law.

Dr. Marple's employment contract clearly and unambiguously provided that she was an at-will employee and contained no guarantee of future employment or procedure for termination.[13] We therefore must consider whether state law gave Dr. Marple an entitlement to continued employment as superintendent. The *West Virginia Constitution* declares her position to be at-will. It says: "The West Virginia board of education shall . . . select the state superintendent of free schools *who shall serve at its*

_____

[13] "Where the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. Pt. 2, *Bethlehem Mines Corp v. Haden*, 153 W.Va. 721, 172 S.E. 126 (1969).

21

*will and pleasure.*" W.VA. CONST. Art XII, §2 (1957) (emphasis added). Her position is also designated to be at-will by a statute, which provides: "There shall be appointed by the state board a State Superintendent of Schools *who serves at the will and pleasure of the state board.*" W.VA. CODE § 18-3-1 [2006] (emphasis added).

Interpreting a similar statute, we have held: "W.Va.Code, 5-3-3 (1961), by providing that assistant attorneys general shall serve at the pleasure of the attorney general, *defines an at-will employment allowing termination at any time with or without cause.*" Syl. Pt. 3, *Williams v. Brown*, 190 W.Va. 202, 437 S.E.2d 775 (1993) (emphasis added). Likewise, the clear and unambiguous language of the statute in *Williams* indicated the Legislature's intent "to give the Attorney General unfettered control over the hiring and firing of assistant attorneys general." *Id.*, 190 W.Va. at 205, 437 S.E.2d at 778. *See also Wilhelm*, 198 W.Va. at 94, 479 S.E.2d at 604 (1996) ("The use of the phrase 'at the will and pleasure of the director' indicates the intent of the legislature to give [the state employer] control over the hiring and firing of deputy directors[.]").

The clear and unambiguous language of *West Virginia Constitution* Article XII, § 2 and West Virginia Code § 18-3-1 [2006] designate the position of Superintendent of Schools for the State of West Virginia to be at-will. Accordingly, the drafters of the Constitution and the Legislature intended to give the State Board of

Education control over the hiring and retention of the Superintendent of Schools for the State of West Virginia.[14]

Therefore, Dr. Marple's claim that she was entitled to continued employment for the Board directly contradicts applicable state law. As we have held: "Although a government employee may have a reasonable basis for understanding terms of his employment, those understandings cannot override state law that defines the terms of employment." Syl. Pt. 2, *Freeman*, 175 W.Va. at 817, 338 S.E.2d at 419.

Still, Dr. Marple argues that she may introduce evidence regarding the Board's usage and custom to show an implied agreement of continued employment. She also asserts that the Board and Mr. Linger were subject to the implied covenant of good faith and fair dealing. Her contentions fail for two reasons. First, custom and usage may not be used to contradict the written terms of a contract but only to supplement the terms of an otherwise ambiguous contract. *Adkins v. Inco Alloys Int'l, Inc.*, 187 W.Va. 219, 226, 417 S.E.2d 910, 917 (1992). Dr. Marple's alleged entitlement to her position directly contradicts her at-will employment contract. Second, "we do not recognize the implied covenant of good faith and fair dealing in the context of an at-will employment

---

[14] However, we caution that: "[P]ublic employees are entitled to be protected from . . . adverse employment consequences resulting from the exercise of their . . . First Amendment rights. However, . . . the State, as an employer, also has an interest in the efficient and orderly operation of its affairs that must be balanced with the public employees' right to free speech, which is not absolute." Syl. Pt. 3, in part, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983). Dr. Marple does not allege that she was terminated from her position because of her exercise of First Amendment rights.

contract." *Miller v. Massachusetts Mut. Life Ins. Co.*, 193 W.Va. 240, 244, 455 S.E.2d 799, 803 (1995).

Accordingly, Dr. Marple's claims under the *West Virginia Constitution* fail as a matter of law.

### D. Dr. Marple's remaining claims

Based on the same facts as her constitutional claims, Dr. Marple asserts causes of action for defamation, false light, and breach of contract. Qualified immunity bars these remaining claims. *See Clark*, 195 W.Va. at 278-79, 465 S.E.2d at 380-81 (Qualified immunity is not limited to claims for constitutional violations.). Dr. Marple's complaint fails to show how the Board and Mr. Linger violated a clearly established statutory or constitutional right. Furthermore, her complaint does not contain any allegation that the Board or Mr. Linger acted fraudulently, maliciously, or oppressively. *See* Syl. Pt. 11, *A.B.*, 234 W.Va. at 507, 766 S.E.2d at 767.

As a final matter, Dr. Marple contends that we should refuse to consider the Board's qualified immunity because the Board did not raise that issue in its written motion to dismiss. However, after the motion was filed, the parties repeatedly argued about qualified immunity, as to *both* the Board and Mr. Linger. There were arguments made on qualified immunity during the hearing before the circuit court and in the Board's proposed order relating to the motion to dismiss. In fact, Dr. Marple apparently regarded the circuit court as having addressed the Board's qualified immunity by stating in her brief to this Court that: "The [circuit court's] extension of the unavailability of absolute immunity in the present context to qualified immunity is a clearly legitimate act."

24

Qualified immunity is an affirmative defense to liability, which under the Rules of Civil Procedure must be pled. However, qualified immunity can be pled at various stages in a case. As one court noted, "qualified immunity is a question of law that may be generally asserted (1) on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Rule 12(c); (3) on a summary judgment motion pursuant to Rule 56(e); or (4) at trial." *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002).[15] *See also*, *State v. Chase Sec., Inc.*, 188 W.Va. 356, 362 n. 19, 424 S.E.2d 591, 597 n. 19 (1992) ("Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official.") (Citation omitted).

However, it is well-established that:

> [S]ince a motion to dismiss is not a pleading, Rule 8(c) [requiring that affirmative defenses be pled] does not become applicable until such time as the motion [to dismiss] is denied and a responsive pleading is filed. *Consequently, a defendant is not precluded from raising an affirmative defense during the proceeding on its motion to dismiss, even though the defense was not raised in the motion to dismiss*.

---

[15] "Because the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules." *Hardwood Group v. Larocco*, 219 W.Va. 56, 61 n.6, 631 S.E.2d 614, 619 n.6 (2006). *See also State v. Sutphin*, 195 W.Va. 551, 563, 466 S.E.2d 402, 415 (1995) ("[W]e have repeatedly recognized that when codified procedural rules . . . of West Virginia are patterned after the corresponding federal rules, federal decisions interpreting those rules are persuasive guides in the interpretation of our rules.") (citations omitted).

FRANKLIN D. CLECKLEY, ROBIN JEAN DAVIS & LOUIS J. PALMER, JR., LITIGATION HANDBOOK ON WEST VIRGINIA RULES OF CIVIL PROCEDURE §8(c) at 208 (4th ed. 2012) (citing *Ruckdeschel v. Falcon Drilling Co., L.L.C.*, 225 W.Va. 450, 456 n.4, 693 S.E.2d 815, 821 n.4 (2010) (emphasis added).

Furthermore, failure to raise an affirmative defense in a motion to dismiss does not result in waiver when "there is no unfair surprise or prejudice to the opposing party." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.08[3], at 8-79 (3d. ed. 2015), "Where an affirmative defense such as qualified immunity "is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely . . . [with the Rules of Civil Procedure] is not fatal." *Holland v. Cardiff Coal Co.*, 991 F.Supp. 508, 515 (S.D.W.Va. 1997) (quoting *Allied Chem. Corp. v. Mackay*, 659 F.2d 854, 855-56 (5th Cir. 1983)). The defense of qualified immunity "is not waived if the defendant 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.' . . . Rather, we look at the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (defense of qualified immunity not waived by failure to plead in answer). *See also*, *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) (same).

Under the procedural facts of this case, we cannot say that the timing of the Board's assertion of qualified immunity waived the defense or subjected Dr. Marple to unfair surprise or prejudice. Therefore, we reject Dr. Marple's argument that we are

26

precluded from considering the Board's qualified immunity. *See, e.g., Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 305-06 (4th Cir. 2006) (Defendant's belated assertion of qualified immunity did not preclude appellate review where defendants originally pleaded sovereign immunity, plaintiff suffered no prejudice or unfair surprise, and the circuit court addressed the issue in its order denying the motion to dismiss).

**IV.**
**CONCLUSION**

We do not pass judgment on the wisdom, correctness, or fairness of Dr. Marple's termination. The *West Virginia Constitution*, statutory law, and her employment contract all gave the Board and Mr. Linger discretion to terminate her position at their will and pleasure. As a matter of law, Dr. Marple had no constitutionally protected interest in continued employment as superintendent. Therefore, Dr. Marple's complaint does not allege a cause of action sufficient to overcome the Board's and Mr. Linger's discretion to terminate her, and qualified immunity bars each of her claims. Accordingly, we reverse the circuit court's November 3, 2014, order and dismiss Dr. Marple's complaint.

Reversed.