No. 18-0211 – *Goodwin v. Fayette County Board of Education, et al.*

**FILED**
**November 12, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WORKMAN, J., dissenting:

Once again, under the guise of appellate review, the majority resolves issues which are underdeveloped below and in so doing renders this Court an adjudicatory body.[1] I dissent from the majority's cursory disposition of this case because it effectively blankets all local boards of education under any degree of state intervention with absolute immunity from suit. The majority's new syllabus point states that whether a local school board is a State actor depends upon the "degree of control" the West Virginia State Board of Education ("State Board") "exercises over the county's school system." Yet it provides no further guidance on factors to consider in making that determination; nor does it conduct a meaningful analysis of this issue. Instead, it concludes that the local board was a State actor without any factual development of the instant situation on that issue below. After summarily declaring the Fayette County Board of Education ("BOE") to be a State actor and therefore entitled to assert qualified immunity, the majority then makes a sharp left turn (providing no further immunity analysis), and reaches the clearly inaccurate

---

[1] *See Cochran v. River Road PSD,* No. 18-0302, 2019 WL 5849372 (W. Va. Nov. 7, 2019) (memorandum decision) (Workman, J., dissenting) (criticizing affirmance of dismissal on grounds not ruled on by circuit court)*; State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 241 W. Va. 335, 355, 825 S.E.2d 95, 115 (2019) (Workman, J., dissenting) (encouraging "full processing of a . . . legal issue by its being fully considered by a lower court, a lower court making a ruling, the parties then briefing and arguing the issue at the appellate level"); *State ex rel. Gallagher Bassett Servs., Inc. v. Webster*, 242 W. Va. 88, ___, 829 S.E.2d 290, 301 (2019) (Workman, J., dissenting) (discouraging premature resolution of "legal issues that hinge on facts" in prohibition).

1

conclusion that local school boards owe no duties to 18-year-old students injured on school property, but outside of the four walls of the school building. For these reasons, I must dissent.

In this case, petitioner alleges the BOE, by and through its employees, was negligent in its supervision of students at Oak Hill High School, which negligence proximately caused petitioner's injuries on a school soccer field. Since the State Board had intervened in the BOE, the threshold issue in this case was whether the BOE was 1) rendered an arm of the State by virtue of this takeover and could therefore raise qualified immunity to petitioner's suit; or 2) whether it continued to be governed by the Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act"), which expressly provides for liability for negligent acts by employees such as those alleged by petitioner.[2]

This distinction is obviously critical to petitioner's claim: if the BOE is found to be an arm of the State and therefore may assert qualified immunity, petitioner's claim would almost certainly fail inasmuch as the general notion of "supervision"—in

---

[2] *See* W. Va. Code § 29-12A-4(c) (1986) (establishing liability for injuries caused by political subdivision employees for negligence in operating motor vehicle, negligence in "performance of acts" within scope of employment, negligence in failing to "keep" public areas and grounds, negligence which occurs "within or on the grounds of [public] buildings").

2

absence of any well-established mandates—has been found to be an inherently discretionary act for which the State is immune.[3] *See W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 514, 766 S.E.2d 751, 773 (2014) (stating that "broad categories of training, supervision, and employee retention . . . fall within the category of 'discretionary' governmental functions" and collecting cases). On the other hand, if not found to be an arm of the State, the BOE continues to be subject to the Tort Claims Act and petitioner's negligence claim clearly survives. Under the Tort Claims Act, political subdivisions such as the BOE are *expressly* "liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29-12A-4(c)(2).

On this issue, the circuit court, without citation or analysis, declared summarily that

> while the [BOE] was in [State Board] intervention, the [BOE]
> is necessarily part of the "State" defined in pertinent part as "all
> boards, offices, commissions, agencies . . . and other
> instrumentalities of the state of West Virginia." W. Va. Code
> §29-12A-3 and not within the purview of the West Virginia

---

[3] In fact, petitioner concedes that "implementation and administration of compliance with the duty to supervise may constitute a discretionary function" and that the "manner in which the duty to supervise is maintained may be a question of discretion." Nevertheless, as is well-established, even if an act is discretionary, if an injured plaintiff establishes that "such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive," qualified immunity will not lie. Syl. Pt. 11, in part, *A. B.*, 234 W. Va. 492, 766 S.E.2d 751. Petitioner identifies no such clearly established rights or laws, *i.e.* a specific directive regarding supervision which was violated, in order to overcome qualified immunity.

3

> Governmental Tort Claims and Insurance Reform Act, W. Va.
> Code §29-12A-l et seq.

Without addressing the circuit court's complete lack of factual or legal analysis for this conclusion, the majority examines two cases from the Southern District of West Virginia wherein the District Court found two local boards of education to be arms of the State for purposes of Eleventh Amendment immunity. *See Workman v. Mingo Cty. Schs.*, 667 F. Supp.2d 679 (S.D.W. Va. 2009); *B. E. v. Mount Hope High Sch.*, No. 2:11-CV-00679, 2012 WL 3580190 (S.D.W. Va. Aug. 17, 2012). The majority then notes that in *Workman*, the District Court evaluated whether the Mingo County Board of Education was a State actor under the factors identified by the Fourth Circuit in *Cash v. Granville County Board of Education*, 242 F.3d 219 (4th Cir. 2001):

> The principal factor, upon which courts have virtually always relied, is whether a judgment against the governmental entity would have to be paid from the States treasury. . . .
>
> . . . .
>
> . . . [W]e keep the State treasury factor in the calculus and look to three additional factors: (1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns—whether local or statewide—with which the entity is involved; and (3) the manner in which State law treats the entity.

*Id*. at 223-24.

Despite tacitly endorsing the use of these factors to determine whether a political subdivision has been rendered an arm of the State, the majority adopts a relatively

4

perfunctory new syllabus point stating that the determination of whether a local board is an arm of the State is dependent upon the "degree of control" exercised by the State Board. It ignores the state treasury factor entirely. Moreover, neither the syllabus point nor opinion itself gives even the slightest guidance regarding what "degree of control" actually means: whether the State's "control" must *actually* be exercised or if the State Board must merely have the *authority* to control; whether the "control" must be exercised over the specific function of the local board at issue or the board and school system as a whole. More importantly, the majority apparently finds no fault whatsoever with the circuit court's failure to conduct any such analysis below, nor is it concerned with petitioner's inability to conduct discovery on this specific issue.[4]

Rather, the majority substitutes its own equally empty analysis of the issue and concludes that on the sole basis of the State Board's *pro forma* meeting minutes that it "exercised extensive, almost complete control" over the BOE. In reality and as readily apparent to even a casual reader, the meeting minutes from the BOE authorizing the

---

[4] Petitioner and the BOE debated during oral argument whose burden it was to develop the record on this issue below. As this Court has stated, "Qualified immunity is an affirmative defense to liability, which under the Rules of Civil Procedure must be pled." *W. Va. of Educ. v. Marple*, 236 W. Va. 654, 667-68, 783 S.E.2d 75, 88-89 (2015). As such, it is the BOE's burden to establish a record sufficient to establish itself as an arm of the State and therefore entitled to assert the affirmative defense of qualified immunity. Discovery on the underlying facts, however, appears to have been complete and revealed disputed issues of material fact regarding the BOE's liability and the comparative negligence of petitioner.

intervention simply parrot the language of West Virginia Code § 18-2E-5(p)(4)(C)[5] which outlines the *broad* areas in which the State Board "may" intervene to "cause improvements" to the BOE. Aside from these minutes, the record is completely devoid of any evidence regarding the State Board's control of the BOE and more importantly, devoid of evidence regarding the areas of control *actually* exercised by the State Board. The bases for state intervention in local school boards are varied and extensive and while the State Board may have reserved its right to intervene in any of the areas permitted by statute, it may well have exercised little to no control over the school functions which underlie petitioner's claim. In that event, there is simply no purpose in extending a blanket of immunity for actions *which are otherwise expressly subject to liability* without even examining the parameters of authority or control the State actually exercised over that function.[6]

The reason the exercise of *actual* authority is critical is because what we are actually determining in conducting this analysis is the applicability of qualified immunity. What the majority's scant analysis fails to recognize is that qualified immunity for the State serves as protection for *distinct* functions of the State and its actors and that, unless those

---

[5] Now W. Va. Code § 18-2E-5(m)(2) (2017).

[6] For example, if the State Board intervened and exercised control only over the high-level matters of curriculum, school closure or consolidation, or budget expenditures, it certainly does not follow that the State Board was likewise necessarily involved in the day-to-day minutiae of the mechanics of student supervision or isolated end-of-year attendance issues. In fact, the likelihood of the State Board becoming involved in such situational and *ad hoc* particulars on an individual school level appears slim indeed.

functions were actually undertaken by the State and proximately relate to the allegations asserted, there is no reasoned purpose for the extension of immunity. Qualified immunity serves to insulate the State and its actors from limitless liability for their discretionary and proprietary decisions for which there is no clear-cut and determinative guidance: "[T]he doctrine of qualified or official immunity bars a claim of mere negligence against a State agency . . . and against an officer of that department acting within the scope of his or her employment, *with respect to the discretionary judgments, decisions, and actions of the officer.*" Syl. Pt. 6, in part, *Clark v. Dunn*, 195 W.Va. 272, 465 S.E.2d 374 (1995) (emphasis added).[7] This purpose quite simply does not translate in an action which is based upon a local school board's simple negligence, unless the underlying function which proximately caused the plaintiff's injury was, in fact, being controlled by the State and should be protected with the cloak of immunity.

Instead, in this case, so fundamental is the right of recovery for claims as those at least asserted by petitioner, that school boards are *expressly* made liable for such allegations, if proven, by virtue of the Tort Claims Act. Therefore, the analysis of whether the BOE is a State actor *for qualified immunity purposes* must be assessed in light of the *specific conduct at issue* in the case. Our qualified immunity caselaw makes this fundamental precept clear. *See A. B.*, 234 W. Va. at 507, 766 S.E.2d at 766 ("'[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom

---

[7] *But see* n.2 *supra* regarding violations of clearly established rights.

7

it attaches.'" (quoting *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (emphasis in original)).

As inadequate as the majority's analysis of the State actor issue is, perhaps more puzzling is its dispositive conclusion: that 18-year old students are owed no duties outside of the school building. The majority's conclusion that since petitioner (age eighteen but still a junior in high school) left the building, "the duty to supervise [him] terminated" is abject nonsense. If an unsupervised child is struck by a car after escaping a school building, does the school escape liability because he was struck outside? The entire issue is whether petitioner was improperly supervised *such that he could* leave the building and injure himself. Furthermore, the property on which he was allegedly injured was school property.

The majority seemingly believes it is justified in this conclusion by virtue of the definition of "student" contained in West Virginia Code § 18A-5-1(g)(1):

> "Student" includes any child, youth or adult who is enrolled in any instructional program or activity conducted under board authorization and within the facilities of or in connection with any program under public school direction: *Provided*, That, *in the case of adults, the student-teacher relationship shall terminate when the student leaves the school or other place of instruction or activity[.]*

8

(emphasis added).[8]   First, nowhere in this definitional provision are adult students exempted from the duty and authority to supervise established in West Virginia Code § 18A-5-1: "The teacher shall stand in the place of the parent(s), guardian(s) or custodian(s) in exercising authority over the school and has control of *all* students enrolled in the school from the time they reach the school until they have returned to their respective homes[.]" (emphasis added).  Secondly, West Virginia Code § 18A-5-1(g)(1) specifically states that the student-teacher relationship does not end until the student leaves the school "or other place of instruction or activity."  It is difficult to conceive of a place more emblematic of an "other place of . . . activity" than an adjacent school athletic field.  Other than including this phrase in their citation of the statute, *the majority does not address this phrase of the statute in any fashion*.  In fact, it inexplicably declares itself "not concerned by the fact that the Petitioner was on Respondent's property, the soccer field, when he was injured."

Instead, the majority boldly declares that the BOE "did not owe a duty of supervision to the Petitioner once he left the school building without authorization."[9]  That is, of course, exactly the point:  petitioner alleges he should not have been permitted to leave the building and escape to an unsupervised school area where he was injured.  For

---

[8] The suggestion that half of the statutory definition of "student" and a singular sentence in a 1985 case definitively establishes the parameters of a school board's duties to adult students is a disturbingly sparse analysis.

[9] The majority's use of the limiting phrases "[i]n light of the unique facts of this case" and "under the narrow facts of this case" signals a result-oriented approach, particularly when there are disputed facts below.

9

purposes of supervisory negligence, the issue of duty is not defined by the *location* of an injury, but the scope of the employee's duties and authority relative to supervising the injured party. And while the majority may bristle at the notion that an 18-year-old seeks to recover for what it perceives is his own negligence, that issue is for a jury to determine under proper instruction of law by the trial court. It is, in fact, no different than any other adult who is comparatively negligent in contributing to his or her own injury—this does not serve as a bar to recovery unless and until a jury finds him or her fifty percent negligent.

While not suggesting that petitioner has necessarily established a right of recovery, this dissent does find that the majority has injected itself into the undeveloped issue of whether the BOE was a State actor and then insinuated itself into the disputed underlying facts by summarily declaring that 18-year old students are owed no duty outside of the school building, even if on school property. The majority's holding herein encourages local boards of education and their employees to act with complete impunity when under State intervention. It further decimates any semblance of duty owed to adult students who happen to turn eighteen before graduating in contravention of clear statutory law. This case should have been reversed and remanded for factual development of the areas of control the State Board exercised over the BOE and a determination as to whether that control rendered the BOE an arm of the State for purposes of these allegations. If the case survived the immunity analysis, a jury should have been permitted to decide the issues of negligence and comparative negligence under proper instruction of law. For these reasons, I respectfully dissent.