**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

January 2017 Term

_____

No. 16-0679

_____

FILED

**May 17, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WEST VIRGINIA DEPARTMENT OF EDUCATION,**
Petitioner

v.

**TAMMY MCGRAW,**
Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie L. Webster, Judge
Civil Action No. 15-C-1893

**REVERSED**

_____

Submitted: April 25, 2017
Filed: May 17, 2017

Jan L. Fox, Esq.
Mark C. Dean, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Counsel for the Petitioner

John D. Wooton, Esq.
Wooton, Davis, Hussell & Ellis
Beckley, West Virginia
Counsel for the Respondent

Matthew S. Criswell, Esq.
Mark L. French, Esq.
Criswell French, PLLC
Charleston, West Virginia
Counsel for the Respondent

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE WORKMAN, deeming herself disqualified, did not participate in the decision of the Court.**

**JUDGE JOSEPH K. REEDER sitting by temporary appointment.**

**SYLLABUS BY THE COURT**

1.      "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."  Syl. Pt. 1, *W.Va. Bd. of Educ. v. Marple*, 236 W.Va. 654, 783 S.E.2d 75 (2015).

2.      "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability."  Syl. Pt. 11, *W.Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W.Va. 492, 766 S.E.2d 751 (2014).

3.      "The Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against state action which affects a liberty or property interest."  Syl. Pt. 1, *Waite v. Civ. Serv. Comm'n*, 161 W.Va. 154, 241 S.E.2d 164 (1977).

4.      "The 'liberty interest' includes an individual's right to freely move about, live and work at his chosen vocation, without the burden of an unjustified label of infamy. A liberty interest is implicated when the State makes a charge against an

i

individual that might seriously damage his standing and associations in his community or places a stigma or other disability on him that forecloses future employment opportunities." Syl. Pt. 2, *Waite v. Civ. Serv. Comm'n*, 161 W.Va. 154, 241 S.E.2d 164 (1977).

5. To state a claim for a violation of a government employee's liberty interest in his/her good name, the employee must allege that the stigmatizing statement made against him/her was false. To the extent that our opinion in *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), is inconsistent with this holding, it is overruled.

6. A government employer implicates its employee's liberty interest in his/her good name when the following elements are alleged: (1) a stigmatizing statement; (2) which was false; (3) was published, or made accessible to the public; (4) in connection with a serious adverse employment action. When these elements are met, the employee must be afforded procedural safeguards under Article III, Section 10 of the West Virginia Constitution.

**Justice Ketchum:**

The West Virginia Department of Education ("the DOE") appeals an order by the Circuit Court of Kanawha County. In its order, the circuit court denied the DOE's motion to dismiss based on qualified immunity.

The underlying lawsuit was filed by Tammy McGraw after the DOE terminated her at-will employment. The lawsuit contained the following two claims against the DOE: (1) a constitutional tort claim, and (2) a claim for wrongful termination. As to her constitutional tort claim, Ms. McGraw alleged that the DOE leaked a letter it received from her previous government employer revealing that she was under investigation for misallocating public funds for personal use. Although she does not dispute that she was, in fact, under investigation on those charges, she alleges the DOE's leak of this letter violated her constitutionally-protected liberty interest.

Upon review, we find that Ms. McGraw failed to outline a liberty interest violation sufficient to overcome the DOE's qualified immunity because the truth of the allegedly leaked letter, *i.e.*, that she was under investigation for misallocating public funds, was not disputed. Therefore, the DOE's qualified immunity bars Ms. McGraw's constitutional tort and wrongful termination claims. We reverse the circuit court's order and dismiss Ms. McGraw's claims against the DOE.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from the DOE terminating Ms. McGraw's at-will employment as its Executive Director of the Office of Instructional Technology. This termination was, at least in part, due to the DOE's receipt of a letter from Ms. McGraw's previous employer, the Virginia Department of Education.[1] The letter stated as follows:

> *Tammy McGraw has been the focus of an ongoing investigation by [The Office of the Virginia State Inspector General] and the [Virginia] department of education for illegal activities and misuse of state funds*. . . . . These charges involve such things as diverting programmatic funds to cover personal travel expenses, purchasing equipment for personal use, falsely submitting travel invoices, and making payments to contractors without contracts and for work not performed. . . .

> *While the investigation is still continuing and a decision on the indictment has not been made*, McGraw has been relieved of her position at the Virginia Department of Education for the above violations of law.

(Emphasis added). In short, the letter revealed that Ms. McGraw was under investigation in Virginia for misallocating public funds for personal use but that a decision on the investigation had not yet been made. The DOE claims that Ms. McGraw failed to disclose this ongoing investigation during her employment interview.

---

[1] Ms. McGraw attached the letter to her complaint. We have held: "A circuit court ruling on a motion to dismiss . . . may properly consider exhibits attached to the complaint[.]" Syl. Pt. 1, in part, *Forshey v. Jackson*, 222 W.Va. 743, 671 S.E.2d 748 (2008).

Ms. McGraw does not dispute that she was under investigation in Virginia for misallocating public funds for personal use. Instead, she complains that the letter was leaked to local news media in response to media inquiries as to why the DOE terminated her at-will employment. Ms. McGraw's complaint states the letter "was provided to the *Charleston Gazette* by a member of the West Virginia Department of Education[,]" and "[m]ultiple news articles were published based on the false information contained in the letter."

Ms. McGraw filed a lawsuit against the DOE asserting claims for a constitutional tort and wrongful termination.[2] The DOE filed a motion to dismiss her lawsuit under West Virginia Rule of Civil Procedure 12(b)(6),[3] asserting that qualified immunity barred Ms. McGraw's claims.[4] The circuit court failed to order Ms. McGraw

---

[2] Ms. McGraw joined the Virginia Department of Education and one of its employees as defendants in her constitutional tort claim, and she asserted various other claims against them as well. The Virginia Department of Education and its employee are not parties to this appeal, and the claims against them are not pertinent to our resolution of this dispute.

[3] West Virginia Rule of Civil Procedure 12(b)(6) [1998] allows a defendant in a civil action to file a motion to dismiss a claim against him/her for "failure to state a claim upon which relief can be granted[.]"

[4] When the DOE filed its motion to dismiss, Ms. McGraw had filed an amended complaint. The DOE's motion to dismiss specified that it sought dismissal of Ms. McGraw's amended complaint because that was the then-operative pleading. While the motion to dismiss was pending, Ms. McGraw filed a second amended complaint in which her constitutional tort and wrongful termination claims remained substantively the same. Because Ms. McGraw's second amended complaint was identical to the amended complaint in regard to her constitutional tort and wrongful termination claims, our ruling herein extends to both the amended complaint and the second amended complaint.

3

to file a reply to the DOE's motion to dismiss pleading qualified immunity; instead, it scheduled a hearing on the DOE's motion.[5]

On June 16, 2016, the circuit court entered an order denying the DOE's motion to dismiss, finding that Ms. McGraw pleaded sufficient facts to outline a liberty interest violation and that qualified immunity does not bar her claims for a constitutional tort or wrongful termination. It is from that order that the DOE brings this appeal.

## II.
## STANDARD OF REVIEW

In this appeal, we assess a circuit court order denying a motion to dismiss based on qualified immunity. We have held: "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."[6]

---

[5] In *Hutchison v. City of Huntington*, 196 W.Va. 139, 149-50, 479 S.E.2d 649, 659-60 (1996), we stated that when a defendant's answer pleads the defense of governmental immunity, the circuit court should order the plaintiff to file a reply tailored to the defendant's immunity defense. We provided: "Under the West Virginia Rules of Civil Procedure, the plaintiff is required to file a reply to a defendant's answer only if the circuit court exercises its authority under Rule 7(a) to order one. . . . The court's discretion not to order such a reply ought to be narrow; where the defendant demonstrates that greater detail might assist an early resolution of the dispute, the order to reply should be made." *Id.* Ms. McGraw's original complaint provided scant detail of the basis of her constitutional tort claim against the DOE, and consequently, she filed two amended complaints in the course of the proceedings before the circuit court. Had the circuit court required Ms. McGraw to file a reply to the DOE's motion to dismiss pleading qualified immunity, it might have assisted an early resolution to this dispute.

[6] Syl. Pt. 1, *W.Va. Bd. of Educ. v. Marple*, 236 W.Va. 654, 783 S.E.2d 75 (2015).

4

Having established that this appeal is properly before this Court, we review the circuit court's order de novo.[7] "In conducting a de novo review, we apply the same standard applied in the circuit court."[8] That is, generally, "dismissal for failure to state a claim is only proper where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint."[9] "If the complaint alleges sufficient facts, it must survive a . . . motion to dismiss even if it appears that recovery is very remote and unlikely."[10] Under this general pleading standard, "the complaint is construed in the light most favorable to plaintiff [Ms. McGraw], and its allegations are to be taken as true."[11] However, to the extent Ms. McGraw's complaint is based on allegations of fraud, a heightened pleading standard applies, and the circumstances constituting fraud must be stated with particularity.[12]

---

[7] Syl. Pt. 4, in part, *Ewing v. Bd. of Educ. of Cty. of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998) ("When a party . . . assigns as error a . . . denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.").

[8] *Forshey*, 222 W.Va. at 749, 671 S.E.2d at 754 (regarding circuit court order granting defendant's motion to dismiss).

[9] *Marple*, 236 W.Va. at 660, 783 S.E.2d at 81.

[10] Franklin D. Cleckley, Robin Jean Davis, & Louis J. Palmer, Jr., Litigation Handbook on West Virginia Rules of Civil Procedure § 12(b)(6) at 385-86 (4th ed. 2012).

[11] *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978).

[12] West Virginia Rule of Civil Procedure 9(b) [1998].

5

### III.
### ANALYSIS

The DOE argues the circuit court erred by failing to dismiss Ms. McGraw's claims based on qualified immunity. "Qualified immunity preserves the freedom of the State, its agencies, and its employees to deliberate, act, and carry out their legal responsibilities within the limits of the law and constitution."[13] As we explain below, qualified immunity bars recovery for Ms. McGraw's constitutional tort and wrongful termination claims. We discuss the standard for qualified immunity and its application to Ms. McGraw's claims in turn.

### A. *Qualified Immunity in General*

The first step in determining whether a state agency is entitled to qualified immunity is:

> [A] reviewing court must first *identify the nature of the governmental acts or omissions which give rise to the suit* for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions.[14]

The facts giving rise to Ms. McGraw's suit were the DOE's termination of her at-will employment and its alleged leak of a letter explaining its non-retention of Ms. McGraw

---

[13] *Marple*, 236 W.Va. at 660, 783 S.E.2d at 81.

[14] Syl. Pt. 10, in part, *W.Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W.Va. 492, 766 S.E.2d 751 (2014) (emphasis added).

as an employee. We have stated, "employee retention . . . fall[s] within the category of 'discretionary' governmental functions."[15]

As to discretionary functions,

> To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in *violation of clearly established statutory or constitutional rights or laws* of which a reasonable person would have known *or are otherwise fraudulent, malicious, or oppressive* in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.[16]

Thus, the second step in our analysis is to determine whether the DOE violated a clearly established statutory or constitutional right or law (or otherwise acted fraudulently, maliciously, or oppressively) in its alleged acts or omissions giving rise to Ms. McGraw's suit. We now evaluate Ms. McGraw's claims against this qualified immunity standard.

## B. Constitutional Tort Claim

First, we examine Ms. McGraw's claim that the DOE violated her constitutionally-protected liberty interest in her good name. The DOE argues that qualified immunity bars this claim for two reasons: (1) the facts alleged in the complaint do not outline a liberty interest violation (or any other clearly-established constitutional or statutory violation); and (2) she makes no clear allegations of fraud, malice, or

---

[15] *A.B.*, 234 W.Va. at 514, 766 S.E.2d at 773.

[16] Syl. Pt. 11, *A.B.*, 234 W.Va. 492, 766 S.E.2d 751 (emphasis added).

7

oppression. For the reasons explained below, we agree with the DOE on both these arguments.

### i. There Was No Liberty Interest Violation

In her complaint, Ms. McGraw alleged that the DOE leaked a letter written by the Virginia Department of Education to the *Charleston Gazette*.[17] The letter revealed that she was the subject of an investigation in Virginia for misallocating public funds for personal use. It also stated that the investigation had not been completed. Ms. McGraw does not dispute the truth of the letter, that is, that she was under investigation in Virginia for misallocating funds for personal use. Nevertheless, she claims that the DOE's leak of the letter violated her constitutionally-protected liberty interest in her good name. By contrast, the DOE asserts these facts are not sufficient to outline a liberty interest violation.

We use the following standard to determine whether an individual's constitutionally-protected liberty interest in his/her good name has been implicated: "A liberty interest is implicated when the state makes a charge against the individual that might seriously damage his standing and associations in the community or places a

---

[17] The DOE argues that Ms. McGraw presented insufficient evidence that it leaked the letter to local news media. Ms. McGraw's complaint alleges the letter "was provided to the Charleston Gazette *by a member of the West Virginia Department of Education*." (Emphasis added). In assessing the DOE's motion to dismiss, "the complaint['s] allegations are to be taken as true." *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1998). As required by our well-established law, for the limited purpose of this appeal based on the DOE's motion to dismiss, we take as true Ms. McGraw's factual allegation that the DOE leaked the letter.

stigma or other disability on him that forecloses future employment opportunities."[18]

When an individual's liberty interest is implicated, he/she must be afforded procedural safeguards under Article III, Section 10 of the West Virginia Constitution (the Due Process Clause).[19]

Under certain circumstances, this liberty interest concept applies in the realm of government employment. The Supreme Court of the United States provided in *Bd. of Regents v. Roth* that:

> There might be cases in which a State refused to re-employ a person under such circumstances that interest in liberty would be implicated. . . . For 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'[20]

Relying on *Roth*, this Court found in *Waite v. Civil Service Commission*:

> A liberty interest is implicated when the state "makes a charge against him that might seriously damage his standing and associations in the community." *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972). The Roth Court stated that a charge of dishonesty or immorality would implicate an individual's liberty interests. We follow these principles and find that *an accusation or label given the individual [state employee] by his employer which belittles his worth and dignity as an individual and, as a consequence, is likely to*

---

[18] Syl. Pt. 2, in part, *Waite v. Civ. Serv. Comm'n*, 161 W.Va. 154, 241 S.E.2d 164 (1977).

[19] Syl. Pt. 1, *Waite*, 161 W.Va. 154, 241 S.E.2d 164 ("The Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against state action which affects a liberty or property interest.").

[20] *Roth*, 408 U.S. 564, 573 (1972).

9

*have severe repercussions outside his work world, infringes one's liberty interest.*[21]

Again, in *Major v. DeFrench*, we provided:

> *[T]he government cannot dismiss an employee on charges that call into question her good name*, or that impose a stigma upon an employee which could foreclose her freedom to pursue other employment opportunities, without providing the employee notice of the charges against her and a hearing in which the factual basis of the charges can be contested.[22]

Therefore, under certain circumstances, a government employer may implicate its employee's constitutionally-protected liberty interest in his/her good name through a statement which might seriously damage the employee's standing and associations in the community or imposes a stigma which forecloses future employment opportunities.[23]

---

[21] *Waite*, 161 W.Va. 154, 159-60, 241 S.E.2d 164, 167-68 (1977).

[22] *Major*, 169 W.Va. 241, 256, 286 S.E.2d 688, 697 (1982) (emphasis added).

[23] However, to be clear, "not all public employees have a protected liberty interest in continued government employment, even when his/her termination makes him/her less attractive to future employers." *Marple*, 236 W.Va. at 665, 783 S.E.2d at 86. There are limited exceptions to this general rule which are not at issue in this case: tenured employees and classified civil service employees. *See Bd. of Educ. of Cnty. of Mercer v. Wirt*, 192 W.Va. 568, 574, 453 S.E.2d 402, 408 (1994) ("There can be little doubt that tenured employees have . . . liberty interests in their employment."); *Buskirk v. Civ. Serv. Comm'n*, 175 W.Va. 279, 283 S.E.2d 579, 583 (1985) ("[A] classified civil service employee has a sufficient interest in his continued [un]interrupted employment to warrant against the arbitrary discharge of such employee under [The Due Process Clause] of our Constitution.").

Citing cases pertaining to tenured employees and classified civil service employees, we held in Syllabus Point 12, in part, of *Queen v. W.Va. Univ. Hosp.*, 179 W.Va. 95, 365 S.E.2d 375 (1987), that: "A person employed by a state actor cannot be

(continued . . .)

10

Although this Court has long recognized the liberty interest concept in the area of government employment, we have not defined the elements required to state a liberty interest tort claim by a government employee. Most courts require the following four elements to find that a government employer implicated its employee's liberty interest in his/her good name: (1) a stigmatizing statement; (2) which was false; (3) was published, or made accessible to the public; (4) in connection with a serious adverse employment action.[24] Once these elements are alleged, the employee must be afforded due process protections.

_____

summarily discharged without any procedural protections, because the fundamental promise of due process is freedom from arbitrary treatment." Despite *Queen*'s broad language, we recently explained, "not all public employees have a protected liberty interest in continued government employment[.]" *Marple*, 236 W.Va. at 665, 783 S.E.2d at 86. Therefore, we question the applicability of Syllabus Point 12 of *Queen* outside the limited context of tenured employees and classified civil service employees.

[24] *See, e.g.*, *Wojcik v. Mass. St. Lottery Comm'n*, 300 F.3d 92, 103 (1st Cir. 2002) (requiring following elements to implicate government employee's liberty interest: stigmatizing statement; employee must dispute charges as false; employer intentionally publicized statement; and statement was made in conjunction with an alteration of the employee's status); *Segal v. Cty. of N.Y.*, 459 F.3d 207, 212 (2d Cir. 2006); (establishing following elements for deprivation of employee's liberty interest: stigmatizing statement; statement was made public by employer; statement was made in close temporal relationship to plaintiff's dismissal from employment; and in footnote 5, providing that plaintiff must allege falsity); *Sciolino v. Cty. of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) ("To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false."); *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981) ("[A] constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him[.]"); *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) ("[W]hen a 'nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his

(continued . . .)

11

As to the first requisite element to state a claim for a liberty interest violation, a stigmatizing statement, we have said: "West Virginia does not have a bright-line rule regarding when a charge sufficiently stigmatizes an employee's good name or forecloses his/her prospects for future employment."[25] On the one hand, unexplained terminations and mere charges of incompetence are not stigmatizing enough to implicate a liberty interest.[26] On the other hand, statements which strike at the employee's worth as an individual, such as charges of dishonesty or immorality, implicate a liberty interest.[27]

---

employment, the employer is required to afford him an opportunity to clear his name.'"); *Parker v. Town of Chelsea*, 275 Fed. Appx. 769, 773 (10th Cir. 2008) ("[T]o support a claim for a violation of his liberty interests, [the plaintiff] must show that the defendants made statements that: (1) impugned his 'good name, reputation, honor, and integrity;' (2) were false; (3) occurred in the course of termination; and (4) were published."); Francis C. Amendola, et al., What Constitutes Deprivation of Liberty Interests of School Employees, 16D C.J.S. Constitutional Law § 2206 (2017) ("In order for an educator to demonstrate a deprivation of a liberty interest by defamatory statements, the educator must demonstrate all four of the following elements: (1) the statements impugned the educator's good name, reputation, honor, or integrity; (2) the statements were false; (3) the statements must have occurred in the course of terminating the educator or must have foreclosed other employment opportunities; and (4) the statements must have been published.").

[25] *Marple*, 236 W.Va. at 665, 783 S.E.2d at 86.

[26] Syl. Pt. 5, *Freeman v. Poling*, 175 W.Va. 814, 338 S.E.2d 415 ("Courts are rather uniform in holding that an unexplained termination or discharge from employment does not create a sufficient stigma to invoke a liberty interest protection."); *Marple*, 236 W.Va. at 665, 783 S.E.2d at 86 (finding no liberty interest violation in the Board of Education's possible charge of incompetence against its superintendent).

[27] *Marple*, 236 W.Va. at 665, 783 S.E.2d at 86 ("[A] charge regarding an employee's character flaw implicate a liberty interest (*i.e.*, charges of dishonesty, immorality, or criminality)."); *Waite*, 161 W.Va. at 159-60, 241 S.E.2d at 167-68 ("[A] charge of dishonesty or immorality would implicate an individual's liberty interest.")

12

"Allegations of substance abuse, mental illness, criminal conduct, dishonesty, and immorality clearly rise to the level of stigmatization required to state a claim for a deprivation of a liberty interest."[28] In short, the statement must impugn the employee's good name, reputation, honor, or integrity.

Second, the plaintiff must allege that the statement forming the basis of his/her liberty interest violation was false. The United States Supreme Court has explained the rationale behind this rule as follows:

> [T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely "to provide the person an opportunity to clear his name." If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him.[29]

The majority of jurisdictions agree that it serves no useful purpose to require a name-clearing hearing for an employee who does not dispute the charges against him/her.[30] Our research has not revealed a single jurisdiction outside West Virginia in which a government employer implicates its employee's liberty interest through an uncontested statement.

Nevertheless, in *Waite v. Civil Service Commission*, we stated in a footnote that: "the truth or falsity of the charge does not enhance or diminish the impairment of the

---

[28] Jenny S. Brannon, The Publication Debate in Deprivation of Occupation Liberty Claims, 47 U. Kan. L. Rev. 171, 183 (1998).

[29] *Codd v. Velger*, 429 U.S. 624, 627-28 (1977).

[30] *See* sources cited *supra* note 24, at 11.

13

liberty interest."[31]  We are persuaded that the United States Supreme Court was correct; there is no useful purpose behind requiring a government employer to afford its employee a hearing to clear his/her name of charges the employee does not dispute.

Therefore, we hold that to state a claim for a violation of a government employee's liberty interest in his/her good name, the employee must allege that the stigmatizing statement made against him/her was false.  To the extent that our opinion in *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), is inconsistent with this holding, it is overruled.

Third, the stigmatizing and false statement must have been made accessible to the public for there to be a violation of the employee's liberty interest in his/her good name.[32]  The rationale behind this rule is that if the statement is not made public, "it cannot properly form the basis for a claim that the [employee's] interest in his 'good name, reputation, honor, or integrity,' was . . . impaired."[33]  A statement about a government employee which is kept private is not sufficiently likely to affect the employee's good name outside his/her work-world and thus form a proper basis for a liberty interest violation.

---

[31] *Waite*, 161 W.Va. at 161 n.5, 241 S.E.2d at 168 n.5.

[32] *Bishop v. Wood*, 426 U.S. 341, 348 (1976); *Freeman*, 175 W.Va. at 822, 338 S.E.2d at 423 ("Without a public disclosure of accusations against [the employee], he cannot claim that his 'standing and associations in his community' have been damaged.").

[33] *Bishop*, 426 U.S. at 348.

Fourth, and finally, the statement forming the basis of the liberty interest claim must have been made in connection with a serious adverse employment action. This requirement is derived from *Paul v. Davis*, in which the Court clearly provided that there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause[.]"[34] To hold otherwise "would make of the [Due Process Clause] a font of tort law."[35] Thus, reputation alone, "apart from some more tangible interest, such as employment, . . . . is [insufficient] to invoke the procedural protection of the Due Process Clause[.]"[36]

Therefore, we hold that a government employer implicates its employee's liberty interest in his/her good name when the following elements are alleged: (1) a stigmatizing statement; (2) which was false; (3) was published, or made accessible to the public; (4) in connection with a serious adverse employment action. When these elements are met, the employee must be afforded procedural safeguards under Article III, Section 10 of the West Virginia Constitution.

Applying these principles to the present case, the facts alleged in Ms. McGraw's complaint do not state a claim for a liberty interest violation. Her complaint does not dispute the truth of the letter, *i.e.*, that she was under investigation in Virginia

---

[34] *Paul*, 424 U.S. 693, 702 (1976).

[35] *Paul*, 424 U.S. at 701.

[36] *Paul*, 424 U.S. at 702.

15

for misallocating public funds for personal use. Indeed, her complaint confirms that she was accused on those charges in Virginia.

In a similar case, *Melton v. City of Okla. City*,[37] the court found that a police department did not violate a terminated police officer's liberty interest by informing news media that the FBI was investigating the officer for perjury, even though the charge was ultimately found to be baseless. The court explained its finding as follows: "all the statements made by Lt. McBride were true. Mr. Melton *was* accused by the FBI of having committed perjury[.] . . . . Fairly read in context, there is nothing contained in either publication which suggests Lt. McBride . . . accepted the accusation as true or accepted it as its own."[38]

Likewise, Ms. McGraw *was* under investigation in Virginia for misallocating public funds for personal use, and the DOE had no part in leveling the underlying charges against her or causing the investigation to be brought about. Therefore, even if the DOE leaked the letter to the *Charleston Gazette*, as Ms. McGraw has alleged, the letter's statements were true. We find no distinguishing factor in this case which sets Ms. McGraw apart from the plaintiff in *Melton*.

Thus, we find that under the facts of this case, Ms. McGraw's liberty interest was not implicated. She was not entitled to procedural safeguards under the Due

---

[37] 928 F.2d 920 (10th Cir. 1991).

[38] *Melton*, 928 F.2d at 928 (emphasis in original).

Process Clause. There was no liberty interest violation in this case, and we do not find any other constitutional or statutory right infringed upon by the DOE.

### ii. *No Factual Allegations Revealing Fraud, Malice, or Oppression*

The DOE further argues that Ms. McGraw failed to allege facts revealing fraud, malice, or oppression sufficient to overcome its qualified immunity. While Ms. McGraw's complaint is silent on this issue, she argues before this Court that the DOE acted fraudulently, maliciously, and oppressively in failing to investigate the truth of the letter before leaking it to local news media. Nevertheless, she was, as stated in the letter, under investigation in Virginia for misallocating public funds for personal use.

To the extent Ms. McGraw relies on fraud, West Virginia Rule of Civil Procedure 9(b) [1998] provides: "In all averments of fraud . . . , the circumstances constituting fraud must be shall be stated with particularity." Ms. McGraw failed to allege any circumstances revealing fraud. Likewise, her complaint fails to indicate the DOE acted either maliciously or oppressively.

It is undisputed that Ms. McGraw was, as stated in the letter, under investigation in Virginia for misallocating public funds for personal use in her previous employment and that she failed to disclose this investigation to the DOE. She alleged her termination was based on the DOE learning of this investigation through its receipt of the letter, and the DOE seems to concur by arguing that it terminated her for her lack of candor in failing to disclose the investigation during her employment interview.

Therefore, even if the DOE leaked the letter to local news media in response to media inquiries on why it terminated Ms. McGraw, it would have been an

17

honest response to the media's questions.  Thus, we find no fraud, malice, or oppression in the alleged acts giving rise to Ms. McGraw's constitutional tort claim.

### C.  Wrongful Termination.

Next, we examine Ms. McGraw's wrongful termination claim.  Unlike her constitutional tort claim, which was based on an alleged leak of a letter, Ms. McGraw's claim for wrongful termination is based solely on the DOE's decision to terminate her at-will employment.

Ms. McGraw stated in her complaint that her employment was governed by the DOE Employment Handbook.  The Employment Handbook provides that: "The employment relationship of each employee is 'at will.'  'At-will' means that it is for no definite period and is terminable at any time at the will of the State Superintendent, with or without notice, cause or compensation."  Moreover, a letter[39] sent by the DOE to Ms. McGraw outlining some of her employment terms states: "All [DOE] employees are non-contractual, at-will employees."

As to at-will employment, we have held: "the doctrine of employment-at-will allows an employer to discharge an employee for good reason, no reason, or bad reason without incurring liability unless the firing is otherwise illegal under state or

---

[39] This letter was attached to Ms. McGraw's complaint, and is thus properly considered in the DOE's motion to dismiss.

federal law."[40]  On this record, we find no constitutional provision, statute, policy, or other rule which prohibited the termination of Ms. McGraw's at-will employment.

Therefore, unless the DOE acted fraudulently, maliciously, or oppressively in terminating her at-will employment, qualified immunity bars recovery under Ms. McGraw's claim for wrongful termination.  Upon review of Ms. McGraw's complaint, we find no factual allegations revealing fraud, malice, or oppression in the termination of her at-will employment.  She merely claims that the DOE did not fully explain the reason why it terminated her at-will employment, which is not fraudulent, malicious, or oppressive, as required to overcome qualified immunity.  Accordingly, the circuit court erred by failing to dismiss Ms. McGraw's claim for wrongful termination.[41]

---

[40] *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 63, 459 S.E.2d 329, 340 (1995).

[41] Ms. McGraw's complaint also contained a separate claim for punitive damages.  Ms. McGraw voluntarily dismissed this claim, but she still asserts the DOE is liable to pay her punitive damages.  By contrast, the DOE cites West Virginia Code § 55-17-4(3) [2002], which provides: "No government agency may be ordered to pay punitive damages in any action."  Because we found that qualified immunity precludes recovery by Ms. McGraw on her constitutional tort and wrongful termination claims, resolution of the parties' punitive damages argument is not necessary.  Therefore, we decline to address this issue.

**IV.**
**CONCLUSION**

Ms. McGraw failed to outline a liberty interest violation sufficient to overcome the DOE's qualified immunity because the truth of the allegedly leaked letter, *i.e.*, that she was under investigation in Virginia for misallocating funds, was not disputed. Therefore, the DOE's qualified immunity bars Ms. McGraw's constitutional tort and wrongful termination claims. We reverse the circuit court's order and dismiss Ms. McGraw's claims against the DOE.

Reversed.