IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-0389

_____

FILED

**March 5, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES,
Defendant Below/Petitioner,

v.

A.R.,
Plaintiff Below/Respondent.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Kenneth D. Ballard, Judge
Consolidated Cases Nos. 20-C-571 & 20-C-963

REVERSED IN PART AND REMANDED

_____

Submitted:  January 10, 2024
Filed:  March 5, 2024

Jan L. Fox, Esq.
Mark C. Dean, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Counsel for Petitioner

W. Jesse Forbes, Esq.
Jennifer N. Taylor, Esq.
FORBES LAW OFFICES, PLLC
Charleston, West Virginia

L. Dante diTrapano, Esq.
Calwell Luce diTrapano, PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE BUNN, deeming herself disqualified, did not participate in this decision.

JUDGE H. CHARLES CARL, III, sitting by temporary assignment.

SYLLABUS BY THE COURT

1. "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syllabus Point 1, *West Virginia Board of Education v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015).

2. "'When a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.' Syllabus point 4, in part, *Ewing v. Board of Education of County of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998)." Syllabus Point 4, *West Virginia State Police, Department of Military Affairs & Public Safety v. J.H. by & through L.D.*, 244 W. Va. 720, 856 S.E.2d 679 (2021).

3. "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).' Syllabus Point 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977)." Syllabus Point 2, *Mountaineer Fire & Rescue Equipment, LLC v. City National Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020).

i

4.     "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition."  Syllabus Point 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

5.     "If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby."  Syllabus Point 4, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

6.     "In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–1, *et seq.,* and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer."  Syllabus Point 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

7.      "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability."  Syllabus Point 11, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

WALKER, Justice:

In April 2022, the Circuit Court of Kanawha County denied a motion by the Department of Human Services[1] to dismiss two counts of A.R.'s[2] amended complaint, in which she alleged that she suffered injuries due to the Department's negligence. On appeal, the Department argues that the circuit court erroneously denied its motion because it is qualifiedly immune from claims of negligence. A.R. responds that she has alleged more than mere negligence; she has alleged violations of clearly established statutory or constitutional rights or laws. But that is the not the case. Having carefully reviewed the amended complaint, we do not see that A.R. has alleged a violation of a clearly established statutory or constitutional right or law *by the Department*. Consequently, we reverse that part of the circuit court's order denying the Department's motion to dismiss Counts VI (negligence) and VII (negligent hiring/supervision) and remand this matter for further proceedings.

---

[1] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. At oral argument, Petitioner's counsel represented that Petitioner is now the Department of Human Services.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

# I. FACTUAL AND PROCEDURAL BACKGROUND

In July 2020, A.R. sued Dustin Kinser, a Child Protective Services worker; the Department; Child Protective Services; and Capitol Hotels, Inc. d/b/a/ Knights Inn in the Circuit Court of Kanawha County. According to the complaint, A.R. (then, a minor) "was in a placement approved by CPS," when, in July 2018, she notified CPS worker Kinser of "concerns she had about her home life and circumstances." A.R. alleged that Kinser used his position with CPS to gain information about her, groom her, and convince her to leave her allegedly neglectful home for her safety.

A.R. alleged that once with Kinser, he took her to the Knights Inn in Kanawha City where he used illegal drugs, supplied her with alcohol, and sexually assaulted her. A.R. also alleged that Kinser later did the same at various homes in Kanawha County. A.R. alleged that she accompanied Kinser as he performed his work for CPS, and that he was under the influence of illegal drugs when he did so. She also alleged that Kinser took her with him to a CPS office in Kanawha County, then used illegal drugs in the parking lot before entering the office to work. Based on those allegations, A.R. asserted nine claims. Relevant to this matter, A.R. claimed that she was harmed by the Department's negligence, generally, and by its negligent hiring and supervision of Kinser.

The Department moved to dismiss A.R.'s claims, citing A.R.'s failure to serve pre-suit notice. The court granted that motion and dismissed the Department from

the case. Meanwhile, A.R. filed a second suit against the Department *only*. In January 2021, the Department moved to strike one count of that complaint as duplicative of another and to dismiss five other counts. While the Department's motion was pending, A.R. successfully moved to consolidate the two cases.

In January 2022, A.R. filed an eight-count, amended complaint in the consolidated cases.[3] A.R. named the Department in seven counts: I. Violation of the Child Welfare Act;[4] III. Infliction of Emotional Distress;[5] IV. Extreme and Outrageous Conduct; V. Violations of the West Virginia Human Trafficking Statute; VI. Negligence; VII.

---

[3] An affidavit by one of Kinser's coworkers, Debora Pigman, was attached to the amended complaint. As described in the amended complaint, the affidavit "outlines [the Department's] knowledge of [Kinser's] drug use, inappropriate and erratic behavior, prior allegations of inappropriately interacting with a minor, and information related to prior reports to Kinser's supervisors regarding these same issues." There, Ms. Pigman attested that it was "common knowledge in the Kanawha County CPS office that Dustin Kinser was on drugs," and that the incidents alleged in the amended complaint "highlight[] issues that have existed for a long time with the background checks and drug screens for DHHR's CPS workers." We have reviewed the affidavit and do not see that it materially adds to the allegations in the amended complaint, where it is already alleged that "[o]ther West Virginia DHHR workers and supervisors that worked with Kinser knew of and/or suspected his drug use and other inappropriate behavior but failed to take action," and that the Department inadequately trained Kinser and others; inadequately checked the backgrounds of Kinser and others; failed to supervise Kinser and others, properly; and failed to follow policies, procedures, and protocols mandated by the Child Welfare Act.

[4] Chapter 49 of the West Virginia Code is known as the "West Virginia Child Welfare Act." W. Va. Code § 49-1-101(a) (2015).

[5] A.R. later voluntarily dismissed this claim.

3

Negligent Hiring/Supervision; and VIII. Vicarious Liability. In response, the Department moved to strike portions of the amended complaint and dismiss others. Relevant here, the Department asserted that it was qualifiedly immune from A.R.'s negligence claims (Counts VI and VII). A.R. responded that resolution of the Department's immunity defense was best left for summary judgment, and that the amended complaint contained allegations that the Department "violated 'mandatory' (not 'discretionary') duties required by statutory mandates and/or violated Constitutional laws" and engaged in "willful, wanton, deceitful, [and] outrageous conduct . . . ." The court denied the Department's motion by order entered on April 20, 2022, reasoning that,

> [A.R.] has alleged that the actions (and inactions) of Defendants involved mandatory, non-discretionary duties and discovery is in its infancy. Further, [A.R.]'s Complaint includes, but is not limited to, allegations of "gross negligence, gross dereliction of duty, willful, wanton, deceitful, outrageous conduct, all of which clearly establishes [A.R.]'s claims are not simply based on "mere negligence" as Defendants contend. Further, assuming, arguendo, that [A.R.'s] Complaint alleged "mere negligence", [sic] for Defendants' "qualified immunity" defense to bar such claim, it would first need to be clearly established that the actions (or inactions) of Defendants were discretionary in nature and not in violation of clearly established statutory or constitutional laws that a reasonable person would know, or were not otherwise fraudulent, malicious, or oppressive.

The Department now appeals the circuit court's order insofar as the court denied its motion to dismiss Counts VI and Counts VII premised on qualified immunity.[6]

## II. STANDARD OF REVIEW

"A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."[7] "'When a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.'"[8] In our de novo review, this Court takes the allegations in the amended complaint as true, construes them in the light most favorable to A.R.,[9] and tests their sufficiency by the same rubric applied by the circuit court:

> "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the

---

[6] Count VIII (Vicarious Liability) against the Department is not at issue in this appeal.

[7] Syl. Pt. 1, *W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015).

[8] Syl. Pt. 4, *W. Va. State Police, Dep't of Mil. Affs. & Pub. Safety v. J.H. by & through L.D.*, 244 W. Va. 720, 856 S.E.2d 679 (2021) (quoting Syl. Pt. 4, in part, *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998)).

[9] *See* Syl., *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 245 S.E.2d 157 (1978) ("'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syl. pt. 3, *Chapman v. Kane Transfer Company*, W.Va., 236 S.E.2d 207 (1977) *quoting Conley v. Gibson*, 355 U.S. 41, 4546, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).").

5

complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syllabus Point 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).[10]

"The plaintiff's burden in resisting a motion to dismiss is a relatively light one, but he is required at a minimum to set forth sufficient information to outline the elements of his claim."[11]

Finally, "[i]mmunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all," which is why "in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff."[12]  As a corollary,

[t]he ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.[13]

---

[10] Syl. Pt. 2, *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020).

[11] *Price v. Halstead*, 177 W. Va. 592, 594, 355 S.E.2d 380, 383 (1987).

[12] *Hutchison v. City of Huntington*, 198 W. Va. 139, 148, 149, 479 S.E.2d 649, 658, 659 (1996).

[13] Syl. Pt. 1, *id*.

## III. ANALYSIS

The Department argued to the circuit court, and now to this Court, that it is qualifiedly immune from Counts VI and VII of the amended complaint because those are negligence claims arising from discretionary, governmental functions. A.R. responds that she has alleged that the Department failed to meet its obligations under the West Virginia Constitution, state and federal law, and its own policies and procedures, so that the circuit court did not err in denying the Department's motion to dismiss those counts. The Department replies that A.R. has failed to allege that *its* acts or omissions (rather than Kinser's) violated a clearly established statutory or constitutional right or law, so these counts cannot survive its qualified immunity defense. Following a plenary review of the amended complaint and the parties' arguments, we concur with the Department that Counts VI and VII fail to state claims against it for which relief may be granted.

### A.     *A.R.'s Negligence Claims*

To better understand the parties' arguments, we pause to examine Counts VI (negligence) and VII (negligent hiring/supervision) of the amended complaint. To state a claim for negligence, a plaintiff must allege that a defendant has negligently breached a duty owed.[14]  In the most general terms, and at the very least, the plaintiff must allege *how*

---

[14] Syl. Pt. 3, *Wheeling Park Comm'n v. Dattoli*, 237 W. Va. 275, 787 S.E.2d 546 (2016) ("'In order to establish a *prima facie* case of negligence in West Virginia, it must

7

the defendant allegedly harmed her. Surveying the amended complaint for A.R.'s theories as to how the Department—not Kinser—injured her, we see claims that the Department was negligent in that it allegedly violated the Child Welfare Act and related policies (Count VI)[15] and that it failed to hire, train, and supervise Kinser and others with reasonable care (Count VII).[16] In view of the Department's qualified immunity defense, both claims are problematically pleaded. Count VII is pleaded as a negligence claim. As discussed below, the Department is immune from claims of mere negligence arising from discretionary, governmental functions including hiring, training, and supervision. And as to Count VI,

---

be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken.' Syl. pt. 1, *Parsley v. Gen. Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981).").

[15] A.R. casts a wider net with general allegations that the Department "failed to perform their mandatory statutory duties and failed to follow proper procedures, policies, and protocols mandated by the Child Welfare Act." But A.R. does not allege in Count VI *how* the Department did that; that is, A.R. does not allege in Count VI what the Department did or did not do that violated "mandatory statutory duties and . . . proper procedures, policies, and protocols mandated by the Child Welfare Act."

[16] For example, in paragraph 14 of the amended complaint, A.R. alleges that the Department "failed to properly supervise [Kinser] to prevent or to stop his actions." In paragraph 17, A.R. alleges that the Department "failed to conduct an adequate background [sic] of Dustin Kinser prior to employing him as a CPS worker and prior to providing him with the authority and detailed information he used to perpetrate his actions on A.R." In paragraph 18, A.R. alleges that the Department "failed to conduct adequate drug testing and screening that would have revealed Kinser was actively using illegal drugs including methamphetamine."

we do not see that A.R. has alleged how the Department (not Kinser) violated that Act.[17]

So, we are left to infer that when it comes to the Department, A.R.'s theory of liability is that the Department's hiring, training, and supervision of Kinser and others violated the Child Welfare Act and related policies.

A.R. makes those allegations against the Department, directly. She has not included a Department supervisor (by name or as a John or Jane Doe) as a party in the amended complaint. We dealt with a similar scenario in *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, where the plaintiff alleged a claim of negligent hiring/supervision/retention against the West Virginia Regional Jail and Correctional Facility Authority.[18] There, as we do here, the Court first questioned the nature of that theory of negligence when lodged against a state agency, directly. We explained,

> it is of no consequence to our analysis that the parties characterize this as a "direct" claim against the WVRJCFA; in fact, this claim too is based on vicarious liability despite the absence of specifically named "bad actor(s)" who allegedly negligently supervised, trained, and retained D.H. . . . . This

---

[17] Count I is pleaded against all defendants. It is entitled, "Violations of the Child Welfare Act West Virginia DHHR." There, in paragraph 26, A.R. alleges "[t]he Defendants breached their mandatory duties, by, among other things:" The allegation ends there, with paragraph 27 commencing, "[t]he Defendants [sic] violations of the Child Welfare Act constituted gross dereliction of their mandatory duties . . . ." Noticeably absent are the expected allegations of *how* the Department breached its allegedly mandatory duties under the Act and how those alleged breaches harmed A.R.

[18] *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 513, 766 S.E.2d 751, 772 (2014).

claim does not present a scenario where some general duty was statutorily or otherwise imposed upon the State or where the negligence alleged in the complaint cannot be traced to a particular individual(s). The training, supervision, and retention of D.H. unquestionably fell to some public officer(s) or employee(s), from whose alleged negligence respondent's claim derives. However, because respondent did not name a specific individual defendant with respect to this claim coupled with the voluntary dismissal of the claim against "John Doe," we are faced only with the issue of whether immunity bars such a claim against the State in accordance with the principles previously and herein enunciated.[19]

That is the case, here. A.R. has not named a "bad actor" who, on the Department's behalf, allegedly failed to hire, train, or supervise Kinser and others, properly. Regardless, those functions "unquestionably fell to some public officer(s) or employee(s), from whose alleged negligence [A.R.'s] claim derives."[20] So, as in *A.B.*, we conclude that A.R.'s "direct" claim against the Department is, "in fact, . . . based on vicarious liability despite the absence of specifically named 'bad actor(s),'" and our analysis proceeds as such.

---

[19] *Id*. (internal note omitted).

[20] *Id*.

### B.    *Qualified Immunity*

With that clarification made, we return to qualified immunity.  As we have held,

> [i]f a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.[21]

From that individual officer's immunity, it follows that,

> [i]n the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity *bars a claim of mere negligence against a State agency* not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–1, *et seq.,* and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.[22]

If it is determined that the "governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions," the qualified immunity analysis continues, and the

---

[21] Syl. Pt. 4, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

[22] Syl. Pt. 6, *id*. (emphasis added).

11

reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.[23]

We recently distilled these syllabus points into this analysis:

whenever a defendant raises the issue of qualified immunity in a motion to dismiss, the circuit court must look to our qualified immunity body of law and follow the steps this Court expressly has outlined to make the determination of whether qualified immunity applies under the specific circumstances of that particular case. Specifically, these steps include whether: (1) a state agency or employee is involved; (2) there is an insurance contract waiving the defense of qualified immunity; (3) the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.* would apply; (4) the matter involves discretionary judgments, decisions, and/or actions; (5) the acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive; and (6) the State employee was acting within his/her scope of employment. *See generally A.B.*, 234 W. Va. 492, 766 S.E.2d 751.[24]

---

[23] Syl. Pt. 11, *A.B.*, 234 W. Va. at 492, 766 S.E.2d at 756.

[24] *W. Va. Reg'l Jail & Corr. Facility Auth. v. Est. of Grove*, 244 W. Va. 273, 283, 852 S.E.2d 773, 783 (2020).

There is no dispute, here, that the Department is a state agency, no insurance policy waives the defense of qualified immunity, and the West Virginia Governmental Tort Claims and Insurance Reform Act would not apply. So, we proceed to step (4): whether the matter involves discretionary judgments, decisions, and/or actions.

This Court has consistently found training and supervision to be discretionary governmental functions:

> the broad categories of training, supervision, and employee retention, as characterized by respondent, easily fall within the category of "discretionary" governmental functions. *Accord Stiebitz v. Mahoney,* 144 Conn. 443, 134 A.2d 71, 73 (1957) (the duties of hiring and suspending individuals require "the use of a sound discretion"); *McIntosh v. Becker,* 111 Mich.App. 692, 314 N.W.2d 728, 729 (1981) (school board immune for negligent hiring and supervision); *Gleason v. Metro. Council Transit Operations,* 563 N.W.2d 309, 320 (Minn.Ct.App.1997) (claims for negligent supervision, hiring, training and retention are immune as discretionary acts); *Doe v. Jefferson Area Local Sch. Dist.,* 97 Ohio App.3d 11, 646 N.E.2d 187 (1994) (school board is immune from negligent hiring and supervision claims); *Dovalina v. Nuno,* 48 S.W.3d 279, 282 (Tex.App.2001) (hiring, training, and supervision discretionary acts); *Uinta Cnty. v. Pennington,* 286 P.3d 138, 145 (Wyo.2012) ("hiring, training, and supervision of employees involve the policy judgments protected by the discretionary requirement").[25]

---

[25] *A.B.*, 234 W. Va. at 514, 766 S.E.2d at 773.

We have found hiring to be a discretionary, governmental function, too.[26]

Here, A.R. alleges that the Department failed to hire, train, and supervise Kinser and others, properly—alleged omissions that, in accord with *A.B.*, "fall within the category of discretionary functions."[27] So, we proceed to step (5) of the qualified immunity analysis: whether the amended complaint contains allegations that the Department hired, trained, or supervised in such a way as to violate A.R.'s "clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive . . . ."[28]

---

[26] *See Marple*, 236 W. Va. at 663, 783 S.E.2d at 84 (hiring and employee retention are discretionary functions); *W. Va. Div. of Corr. v. Jividen*, No. 14-0368, 2015 WL 1741483, at *4 (W. Va. Apr. 10, 2015) (memorandum decision) (hiring, training, and supervision of corrections officer are discretionary government functions).

[27] Syl. Pt. 11, in part, *A.B.*, 234 W. Va. at 492, 766 S.E.2d at 751. In *A.B.*, we observed that "a broadly-characterized governmental action or function may fall under the umbrella of a 'discretionary' function; but within this discretionary function there are nonetheless particular laws, rights, statutes, or regulations which impose ministerial duties on the official charged with these functions" *Id*. at 514, 766 S.E.2d at 773. A.R. has not pointed the Court to "*particular* laws, rights, statutes, or regulations which impose ministerial duties," *id*. (emphasis added), on the Department to, for example, conduct background checks.

[28] Syl. Pt. 11, *id*. As to the latter part of this standard—"otherwise fraudulent, malicious, or oppressive"—we do not understand A.R. to respond that the Department's alleged acts or omissions were fraudulent or malicious, so that it is not entitled to qualified immunity. Assuming that such is even possible, *see, e.g., State ex rel. W. Va. Atty.-Gen'l, Medicaid Fraud Control Unit v. Ballard*, 249 W. Va. 304, __ n.19, 895 S.E.2d 159, 178

14

We elaborated on that step in *Hutchison*, highlighting the various facets of what is often the breakpoint of the qualified immunity analysis:

> [t]he threshold inquiry is, assuming that the plaintiff's assertions of facts are true, whether any allegedly violated right was clearly established. To prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a "particularized showing" that a "reasonable official would understand that what he is doing violated that right" or that "in the light of preexisting law the unlawfulness" of the action was "apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Indeed, some courts hold that an "official may not be charged with knowledge that his or her conduct was unlawful unless it has been previously identified as such." *Warner v. Graham,* 845 F.2d 179, 182 (8th Cir.1988). But, for a right to be clearly established, it is not necessary that the very actions in question previously have been held unlawful. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039. To define the law in question too narrowly would be to allow defendants "to define away all potential claims." *Kelley v. Borg,* 60 F.3d 664, 667 (9th Cir.1995).
>
> Of course, "a necessary concomitant to the determination of whether the constitutional [or statutory] right asserted by the plaintiff is 'clearly established' at the time the [public official] acted is the determination of whether the

n.19 (2023), it would not negate the Department's claim to qualified immunity in this case. As the Department points out, fraud-like allegations in the amended complaint are tied to Kinser, *e.g.*, "Defendant Kinser used his position as a child protective services worker with the [Department] to identify, groom, and unlawfully abduct A.R. from her home." While that allegation mentions the Department, the alleged acts are Kinser's.

Of course, we have recognized that State agencies may be vicariously liable for the fraudulent, malicious, or oppressive act of an employee taken in the scope of his employment. *See* Syl. Pt. 12, *A.B.*, 234 W. Va. at 492, 766 S.E.2d at 751. As noted above, Count VIII (Vicarious Liability) against the Department is not at issue in this appeal.

plaintiff has asserted a violation of a constitutional [or statutory] right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1792, 114 L.Ed.2d 277 (1991). Moreover, the right the official is alleged to have violated must be specific in regard to the kind of action complained of for the constitutional or statutory right at issue to have been clearly established. When dealing with broad rights, the plaintiff bears the burden of particularizing such a right before those rights are subject to the qualified immunity test of being clearly established. Thus, where a plaintiff's complaint, even when accepted as true does not state a cognizable violation of constitutional or statutory rights, then the plaintiff's claim fails. If the complaint fails to allege a cognizable violation of constitutional or statutory rights it also has failed to state a claim upon which relief can be granted.[29]

Looking once again to the amended complaint, we see that A.R. has alleged, generally, that the Department "failed to perform [its] mandatory statutory duties and failed to follow proper procedures, policies and protocols mandated by the Child Welfare Act codified in W.Va. Code Chapter 49 to prevent injury and harm to A.R." We found a similar allegation wanting in *B.R. v. West Virginia Department of Health and Human Resources*.[30] There, the plaintiff claimed that she was harmed by the Department's failure, among others, to "keep her safe and secure," which she alleged violated "'clearly established West

---

[29] *Hutchison*, 198 W. Va. at 149 n.11, 12, 479 S.E.2d at 659 n.11, 12.

[30] *B.R. v. W. Va. Dep't of Health & Hum. Res.*, No. 17-0564, 2018 WL 2192480, at *2 (W. Va. May 14, 2018) (memorandum decision).

Virginia constitutional, statutory, and legal rights.'"[31] We concluded that the plaintiff's "broad assertion" did "not extend her cause of action beyond that which is plainly asserted; namely, negligence."[32] Similarly, in *R.Q. v. West Virginia Division of Corrections*, we affirmed dismissal of a negligent supervision and retention claim on qualified immunity grounds; there "[p]etitioner did not identify a single policy, procedure, rule, regulation, or statute that the DOC violated," so that he "failed to establish what the DOC did or failed to do that it would have reasonably understood was unlawful with regard to its supervision, retention, and training" of the subject officer.[33]

The allegations in the amended complaint, taken as true, narrate a dismal series of events. That said, the objective tragedy of the allegations (again, if taken as true) does not determine the question of the Department's qualified immunity from A.R.'s negligence claims. To overcome the Department's qualified immunity, A.R. had to "do more than allege that an abstract right has been violated;" she had to allege that the Department did or failed to do something that it would have reasonably understood to be unlawful. Sweeping and vague allegations of violations of the Child Welfare Act and

---

[31] *Id.*

[32] *Id.*

[33] *R.Q. v. W. Va. Div. of Corr.*, No. 13-1223, 2015 WL 1741635, at *5 (W. Va. Apr. 10, 2015) (memorandum decision).

unnamed policies and procedures do not accomplish that. Were it otherwise, allegations like A.R's would "grossly oversimplif[y], and frankly nullif[y]," that step of the qualified immunity analysis pertaining to the violation of clearly established statutory or constitutional rights or laws.[34] For those reasons, we conclude that the circuit court erred in denying the Department's motion to dismiss Counts VI and VII of the amended complaint.

Seeking to fill the gaps in her amended complaint, A.R. now points to various laws and policies she claims the Department violated. For example, A.R. contends that the 274-page, "Child Protective Services Policy,"[35] and the legal authorities it draws upon,[36] are clearly established rights "incorporated into the Amended Complaint" and applicable

---

[34] *A.B.*, 234 W. Va. at 517, 766 S.E.2d at 776. A.R.'s fleeting reference in her response to West Virginia Code §§ 49-1-105 and 49-2-101 only underscores this point. Section 49-2-101 sets forth the Bureau for Social Services' *general* authority and responsibilities. And in section 49-1-105, the Legislature set forth the purpose of the entirety of Chapter 49. A.R.'s reference to § 49-1-105 is no different than alleging a violation of the Child Welfare Act, in toto—an allegation we have explained is too imprecise to defeat the Department's claim to qualified immunity.

[35] W. Va. Dep't of Health & Hum. Res., Child Protective Serv. Pol. (rev'd Dec. 2018), https://dhhr.wv.gov/bcf/policy/Documents/child%20Protective%20Services%20 Policy.pdf (last visited Jan. 19, 2024).

[36] According to A.R., these include the Child Protective Services Policy, itself, the Foster Care Policy, Adoption Policy, Chapter 48 of the West Virginia Code ("Domestic Relations"), the Child Welfare Act, and the Rules of Procedure for Child Abuse and Neglect Proceedings.

"to all Department employees statewide."  But that contention does not assist the Court in determining whether the allegations in the amended complaint surmount the Department's qualified immunity defense.  Similar to A.R.'s allegation that the Department violated the Child Welfare Act, A.R.'s invocation of the entire Child Protective Services Policy "grossly oversimplifies, and frankly nullifies"[37] the requirement of a clearly established constitutional or statutory right or law.  Simply stated, expansive references to entire chapters of the West Virginia Code, to "federal and state laws," and to a 274-page policy are insufficiently particular to allow a court to determine (1) whether a plaintiff has alleged a violation of a statutory or constitutional right or law,[38] and (2) whether such right or law is clearly established.[39]

---

[37] *A.B.*, 234 W. Va. at 517, 766 S.E.2d at 776.  A.R.'s passing reference to "federal and state laws" is similarly unhelpful.  *See Carr v. Veach*, 244 W. Va. 73, 78 n.3, 851 S.E.2d 519, 524 n.3 (2020) ("a skeletal argument, really nothing more than an assertion, does not preserve a claim") (cleaned up).

[38] *Hutchison*, 198 W. Va. at 149 n.12, 479 S.E.2d at 659 n.12 (noting that "a necessary concomitant to the determination of whether the constitutional or statutory right asserted by the plaintiff is 'clearly established' at the time the public official acted is the determination of whether the plaintiff has asserted a violation of a constitutional or statutory right at all") (cleaned up).

[39] The Court is not obligated to exhaust itself speculating as to what particular provisions of the Child Welfare Act, the Child Protective Services Policy, and federal and state laws A.R. argues the Department has violated and in what fashion.  *See* Syl. Pt. 13, in part, *A.B.*, 234 W. Va. at 492, 766 S.E.2d at 751 ("Courts cannot concoct or resurrect arguments neither made nor advanced by the parties.").

Petitioner's references to the Human Rights Act,[40] the Human Trafficking Act,[41] and Article 3, § 10 of the West Virginia Constitution[42] also fail to overcome the Department's qualified immunity defense. In the amended complaint, A.R. alleged that Kinser and Capitol Hotels violated the Human Rights Act—not the Department. Still, in her response before this Court, A.R. asserts that the Department did, too. Yet, A.R. does not explain how the Department violated the Human Rights Act, or how any alleged violation of the Human Rights Act by the Department (rather than Kinser) injured her.[43] Similarly, A.R. does not allege how the Department (rather than Kinser) violated the Human Trafficking Act, or, again, how that violation injured her.[44] A.R. did not allege a violation of her rights under the West Virginia Constitution in the amended complaint, yet she states in her response brief that the Department violated her right to "bodily integrity, safety, and well-being" under article 3, § 10 of the West Virginia Constitution. In making

---

[40] W. Va. Code §§ 5-11-1 to 20. Effective February 8, 2024, the West Virginia Human Rights Act is recodified at West Virginia Code §§ 16B-17-1 to 16B-17-20. *See* Act effective Feb. 8, 2024, 2024 W.Va. Laws S.B. 300.

[41] *Id*. §§ 61-14-1 to 9.

[42] W. Va. Const. art. III, § 10 ("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.").

[43] *See Crouch v. Gillispie*, 240 W. Va. 229, 237, 809 S.E.2d 699, 707 (2018) (no violation of a clearly established statutory or constitutional law where plaintiff failed to demonstrate that alleged violation of internal guideline bore "any causal relation to the ultimate injury").

[44] *See id*.

20

that assertion, A.R. does not allege how the Department—not Kinser—committed such violations, and how those violations resulted in her injury.

A.R. also points to the West Virginia Division of Personnel's Drug- and Alcohol-Free Workplace Policy,[45] claiming that it imposes a duty on the Department to investigate an allegation that an employee is abusing illegal substances. A.R. did not identify this policy in the amended complaint. More problematically, A.R. relies on a portion of the policy that states that "[w]hen reasonable suspicion exists that" an employee has reported to work under influence, "the individual *may be* subject to assessment and disciplinary action . . . ." That language speaks to discretion, not mandated action, so A.R.'s reliance on it to overcome the Department's qualified immunity defense is misplaced.[46]

---

[45] W. Va. Div. of Pers., Drug- and Alcohol-Free Workplace Pol. (rev'd Dec. 18, 2020) https://personnel.wv.gov/SiteCollectionDocuments/Policies/DrugFree.pdf (last visited Jan. 29, 2024).

[46] In certain cases where a plaintiff has failed to offer a heightened pleading in response to a governmental immunity defense, we have remanded the matter to permit the plaintiff to do so. *See, e.g.*, *Doe v. Logan Cnty. Bd. of Educ.*, 242 W. Va. 45, 50, 829 S.E.2d 45, 50 (2019) (observing that "the Court in *Hutchison* offered remedies for situations where a public entity or official asserts immunity in an answer but the plaintiff has failed to file a 'heightened pleading'"). A.R. informs the Court that "[t]he Amended Complaint has pleaded the best case possible, and there is no need for more detailed pleadings." *Cf. Hutchison*, 198 W. Va. at 150, 479 S.E.2d at 660 (advising that "if the individual

## IV. CONCLUSION

For the reasons discussed above, that part of the circuit court's order entered April 20, 2022, denying the Department's motion to dismiss Counts VI and VII of the amended complaint is reversed. This case is remanded to the circuit court for further proceedings consistent with this Opinion.

Reversed in part and remanded.

---

circumstances of the case indicate that the plaintiff has pleaded his or her best case, there is no need to order more detailed pleadings").